The STATE of Ohio, Appellee,

v.

BRIMACOMBE, Appellant.

[Cite as *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–10–1179.

Decided Sept. 30, 2011.

Julia R. Bates, Lucas County Prosecuting Attorney, and Michael J. Loisel, Assistant Prosecuting Attorney, for appellee.

Dan M. Weiss, for appellant.

_____

YARBROUGH, Judge.

{¶ 1} Defendant-appellant, Gregg Brimacombe, appeals his conviction and sentence entered by the Lucas County Court of Common Pleas on one count of rape. For the reasons that follow, we affirm in part and reverse in part the judgment below.

{¶ 2} On December 17, 2009, Brimacombe was indicted on one count of rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(a) and (b), and four counts of sexual battery, fourth-degree felonies, in violation of R.C. 2907.03(A)(5) and (B). The substance of the indictment charged Brimacombe with separate instances of felony sexual conduct with his stepson beginning in October 2003, when the boy was 12 years old, and continuing through July 2008. The indictment alleged that the sexual conduct occurred in Brimacombe's home in Sylvania, Ohio, where the victim and his mother also resided.

{¶ 3} On December 23, 2009, following Brimacombe's request for pretrial release on bond, the trial court set an aggregate monetary bond of $210,000 on the five counts. As additional conditions of release, the court ordered Brimacombe to have no contact with the victim and to "surrender all weapons and guns owned by him to the Sylvania Police Department." On January 5, 2010, he was arraigned and entered a plea of not guilty. The court granted Brimacombe's request to travel beyond Lucas County for work purposes while on release. Previous terms and conditions of the bond were ordered continued, but "with the following stipulation [that] any and all weapons in the possession of attorney [Ken] Sass, relating to this case, shall be turned over to the Sylvania Police Department; a total of seven (7) firearms shall be surrendered in all, no later than 4:30 p.m. on the 6th day of January 2010."

{¶ 4} Eventually, on May 28, 2010, Brimacombe pleaded guilty to the rape count charged under R.C. 2907.02(A)(1)(a) and (b). Nolle prosequi were entered on the four sexual-battery counts. The sentencing transcript indicates that after informing Brimacombe of the consequences of his guilty plea, the court permitted the prosecutor to ask him a series of questions to which he responded in more detail about his relationship to the victim, the specific sexual conduct involved, and the dates and location where it occurred. After this questioning, the court accepted his guilty plea and reviewed defense counsel's sentencing memorandum. A presentence investigation and report were waived. The court received mitiga-

tion statements from defense counsel and Brimacombe and a victim-impact statement from the victim's mother. The prosecutor offered no statement, but asked the court to order the surrendered weapons destroyed.

{¶ 5} The court then proceeded with sentencing and sexual-offender classification hearings. The court imposed the maximum term of ten years' imprisonment on the rape count and ordered Brimacombe to be registered as a Tier–III child-sex offender. The court also imposed five years of mandatory postrelease control and then further stated: "[A]ny and all weapons that were confiscated, those will be ordered destroyed." A judgment entry recounting Brimacombe's plea and sentence and ordering the firearms destroyed was filed June 2, 2010.

{¶ 6} This appeal followed. Brimacombe now assigns two errors for review, the first of which states:

{¶ 7} "A. The trial court's [sic] abused its discretion when it sentenced the appellant to a maximum prison term."

{¶ 8} In support of the first assignment, counsel for Brimacombe asserts that the court abused its discretion in failing to articulate the specific aspects of his conduct that warranted the maximum sentence. Counsel points to Brimacombe's having no prior criminal record, his steady employment for 15 years, and the numerous favorable letters that his friends and colleagues filed with the court. Balanced against these positive facts, he argues that the court misapplied the sentencing factors in R.C. 2929.12 by "fail[ing] to provide any support on the record" as to how Brimacombe's sexual abuse of his stepson was "more serious than conduct that normally constitutes the offense."

{¶ 9} Appellate courts review assigned errors challenging the sentencing court's application of R.C. 2929.11 and 2929.12 under the two-step approach announced in *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.[1] Before evaluating Brimacombe's maximum sentence under *Kalish,* however, we will first address his contentions regarding the general application of R.C. 2929.12 in the wake of *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470.

{¶ 10} After *Foster,* "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required *to make findings*

---

1. Noting that *Kalish* is a plurality opinion, some appellate districts have declined to adopt its two-pronged test. Instead, these districts apply only "the traditional clear and convincing/contrary to law standard." See *State v. Harris,* 8th Dist. No. 90699, 2008-Ohio-5873, 2008 WL 4885049, ¶ 99, fn. 1; *State v. Franklin,* 182 Ohio App.3d 410, 2009-Ohio-2664, 912 N.E.2d 1197, ¶ 6–9 (10th Dist.); cf. *State v. Irvin,* 4th Dist. No. 08CA3057, 2009-Ohio-3128, 2009 WL 1830759, ¶ 6, fn. 1. In reviewing felony sentences in this district, we have followed *Kalish* 's two-pronged test, and we do so here. See *State v. Turner,* 6th Dist. No. L–09–1195, 2010-Ohio-2630, 2010 WL 2334420, and *State v. Harris,* 6th Dist. No. WD–10–020, 2011-Ohio-3233, 2011 WL 2566304.

*or give their reasons* for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. (Emphasis added.) While trial courts are not required to make findings or give reasons for imposing such sentences, they still must carefully consider the sentencing statutes that apply to every felony case. See *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38. R.C. 2929.11 and 2929.12 were left undisturbed by *Foster* and thus remain the two principal statutes for the trial court to employ when sentencing felony offenders. See *State v. Teel,* 6th Dist. No. S–06–045, 2007-Ohio-3570, 2007 WL 2013529, ¶ 12; *State v. Elswick,* 11th Dist. No. 2006–L–075, 2006-Ohio-7011, 2006 WL 3833868, ¶ 53. As well, the court must be "guided by statutes that are specific to the case itself." *Mathis* at ¶ 38.

{¶ 11} R.C. 2929.12 is a guidance statute. It sets forth the seriousness and recidivism criteria that a trial court *"shall consider"* in fashioning a felony sentence. Id. at ¶ 38. Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense. Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes. While the phrase "shall consider" is used throughout R.C. 2929.12, the sentencing court is not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender. Indeed, no specific recitation is required. *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793. Merely stating that the court considered the statutory factors is enough. Id. See also *State v. Friess,* 6th Dist. No. L–05–1307, 2007-Ohio-2030, 2007 WL 1229313, ¶ 7.[2]

{¶ 12} We turn now to Brimacombe's argument regarding the trial court's choice of the maximum sentence for his rape conviction. In *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, the Supreme Court established a "two-pronged" approach for appellate review of felony sentences, stating:

{¶ 13} "First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first

---

2. Brimacombe relies on *Kalish* in claiming that an on-the-record explanation from the sentencing court is necessary in order to demonstrate how it weighed and applied the seriousness and recidivism factors in R.C. 2929.12. *Kalish,* however, affords no aid for this view. Indeed, there the Supreme Court arguably moved from permitting merely pithy recitations of statutory factors in post-*Foster* sentences to allowing, if not approving, muteness. The *Kalish* court explicitly stated that a sentencing court need not give *any* reason for the sentence selected within the permissible range and that even a sentence imposed on a "silent record" will be presumed compliant with R.C. 2929.11 and 2929.12. See *Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 12 and ¶ 18, fn. 1, citing *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, third paragraph of the syllabus.

prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." *Kalish* at ¶ 4.

{¶ 14} Here, our review of Brimacombe's sentence is abbreviated, for he concedes that it "was not contrary to law." A choice of sentence from within the permissible statutory range cannot, by definition, be contrary to law. Id. at ¶ 15. Thus, *Kalish*'s first prong is satisfied.

{¶ 15} The second prong directs us to review the trial court's "exercise of its discretion in selecting a sentence within the permissible statutory range," using the sentencing record as the context. *Kalish* at ¶ 17. This prong employs the traditional language for assessing discretion—that is, whether in selecting a specific prison term the court's decision was "unreasonable, arbitrary or unconscionable." Id. at ¶ 20. Brimacombe argues that his receipt of the maximum sentence was an abuse of discretion because he did not meet any of the statutory criteria for likely recidivism and, further, the court failed "to explain on the record" how the admitted conduct was more egregious than comparative behavior in other child-rape cases. These two points, he insists, indicate that the court must have ignored the criteria set forth in R.C. 2929.12(B) and (D)(1) through (4). We find no merit in these contentions.

{¶ 16} Brimacombe's plea of guilty operated as a judicial admission of factual guilt. Crim.R. 11(B)(1); *State v. Barnett* (1991), 73 Ohio App.3d 244, 248, 596 N.E.2d 1101. As a complete admission of guilt, it embraced not only the discrete acts alleged, but the totality of the substantive conduct involved in committing the crime. Id. We have thoroughly reviewed the transcript of the sentencing hearing.[3] The statements at the hearing graphically informed the court that Brimacombe's stepson suffered exacerbated psychological harm from the sexual abuse. The abuse began when the boy was 12 and continued over four years. The admitted conduct included anal and oral penetration. The court specifically noted how Brimacombe's acts had inflicted severe, if not irreparable, mental and emotional harm on his victim. As described, the boy had been a "bright and happy A–B student," but the abuse rendered him depressed and angry, and he began failing in school.

{¶ 17} Statements taken at the hearing also indicated how Brimacombe's method of manipulation and control, combined with overt threats, verbal abuse, and his physically intimidating stature, was an aggravating part of the total conduct. To monitor access and movement, he installed cameras and warning buzzers throughout the home, including the boy's bedroom. Additional state-

---

**3.** R.C. 2929.19(B)(1) requires the court to consider the record, any victim-impact statement(s), and any other relevant information presented at the hearing before imposing sentence.

ments indicated that the boy had been threatened "not to tell his mother," implying that harm might ensue if the abuse were revealed. Finally, the court stated its belief that the psychological and emotional damage suffered would be "lifelong" and that cruelty was indicated by Brimacombe's "demonstrated pattern of abuse."

{¶ 18} A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12. *Arnett*, 88 Ohio St.3d at 215, 724 N.E.2d 793, citing *State v. Fox* (1994), 69 Ohio St.3d 183, 193, 631 N.E.2d 124. R.C. 2929.12(B)(1) requires the court to consider whether the victim's age made Brimacombe's conduct more serious than conduct that would normally constitute the offense. That section explicitly recognizes that "offenses against children are especially serious." *Arnett* at 216.

{¶ 19} As the sentencing transcript reflects, the court also considered Brimacombe's lack of a criminal record, acknowledged his employment history, and discussed the supportive letters it received on his behalf. However, the court could reasonably assign this evidence little or no mitigating weight as compared to the aggravating circumstances. *Fox* at 193. As we have said, the court is required only to *consider* these factors, not *explain* how it considered or assigned weight to any of them. *Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 20} Nonetheless, that the court weighed the sentencing factors is clear. The transcript reveals the court's explicit reference to R.C. 2929.11 and to balancing the seriousness and recidivism factors under R.C. 2929.12. These references, which were repeated in the sentencing entry, only further confirm that the court considered those factors. See *State v. Kase*, 187 Ohio App.3d 590, 2010-Ohio-2688, 932 N.E.2d 990, ¶ 17–18. Nothing in the sentencing record otherwise suggests that the court's selection of the maximum sentence was "unreasonable, arbitrary or unconscionable." Under *Kalish*'s second prong, no more is required. See *State v. Harris*, 2008-Ohio-5873, 2008 WL 4885049, at ¶ 26.

{¶ 21} Accordingly, the first assignment of error is not well taken.

{¶ 22} The second assignment of error states:

{¶ 23} "B. The trial court without legal authority confiscate [sic] weapons or guns owned by the appellant."

{¶ 24} At the conclusion of the sentencing hearing, after defense counsel Schwab finished speaking, there occurred the following colloquy:

{¶ 25} "Mr. Sass: Your Honor, may I address the court?

{¶ 26} "The Court: On what basis?

{¶ 27} "Mr. Sass: My name is attorney Ken Sass. He [Brimacombe] does have the firearms disability at this time, Your Honor. If the Court would allow me to take possession of them, I would sell them to provide monetary value to the family. I would not give any access to anyone that is not allowed to have access to the weapons. They do have significant monetary value.

{¶ 28} "The Court: What family are you going to provide it to?

{¶ 29} "Mr. Sass: His mother, Your Honor.

{¶ 30} "The Court: No. Answer is no. Destroyed. Any questions?"

{¶ 31} Counsel for Brimacombe argues that the court's rather quick and sententious order to destroy the firearms was a de facto forfeiture that disregarded the statutory procedure for forfeiting property in criminal cases. The state, in response, quotes only a portion of R.C. 2981.02, defining "instrumentality," and then summarily concludes that "the weapons should be destroyed pursuant to a legal order made by the trial court." That assertion, however, merely begs the question, for the court did not indicate on what statutory authority it relied in ordering the firearms destroyed. Hence, the state's abbreviated reply is unconvincing.

{¶ 32} As a general matter, forfeitures of property are not favored under Ohio law. *State v. Lilliock* (1982), 70 Ohio St.2d 23, 25, 24 O.O.3d 64, 434 N.E.2d 723; *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, 880 N.E.2d 150, ¶ 8. "Whenever possible, [applicable-forfeiture] statutes must be construed so as to avoid a forfeiture of property." *Lilliock* at 26. Thus, a forfeiture will not be presumed. Moreover, statutes "in derogation of private property rights" are strictly construed against the state. Id. See also *State v. Rogers*, 5th Dist. No. CT2010–0013, 2010-Ohio-5543, 2010 WL 4621516, ¶ 26. Here, the seven firearms at issue were surrendered to the Sylvania Police Department as one of the conditions of the court's order by which Brimacombe secured his pretrial release. Also, neither party disputes that as a putative felon then under indictment, Brimacombe fell within the legal disability of R.C. 2923.13(A)(2). Thus, from penal interest as well, he was compelled immediately to divest himself of their possession. However, a strict construction against forfeiture precludes construing those reasons for surrendering the firearms as a basis for forfeiture.

{¶ 33} Effective July 1, 2007, the former statutes regulating the disposition of property seized and held by a law-enforcement agency, such as R.C. 2933.41 and 2933.43, were repealed. The General Assembly replaced them with a significantly different and comprehensive scheme under R.C. Chapter 2981. See *State v. Cruise*, 185 Ohio App.3d 230, 2009-Ohio-6795, 923 N.E.2d 702, ¶ 6. R.C. 2981.01 through 2981.14 now define and establish the mandatory procedures for the

forfeiture of property involved in, or relating to, certain offenses. They also delineate the notice requirements, procedures, and hearings for adjudicating the validity of interests asserted by third persons and for reviewing the proportionality of a particular forfeiture in relation to the value of the property involved. See R.C. 2981.03, 2981.04(D) through (G), 2981.05(B) and (C), and 2981.09; *State v. Jamison*, 2d Dist. No. 23211, 2010-Ohio-965, 2010 WL 892082, ¶ 29; *State v. Clark*, 173 Ohio App.3d 719, 2007-Ohio-6235, 880 N.E.2d 150, ¶ 14.

{¶ 34} To pursue forfeiture of an offender's property, Chapter 2981 creates both a criminal process under R.C. 2981.04 and a civil process under R.C. 2981.05. R.C. 2981.03(F) allows the prosecutor to elect either process. Where the commission of an offense has entitled a law-enforcement agency to seize and hold "property subject to forfeiture," that section also mandates that if "a criminal forfeiture has *not* begun under section 2981.04 * * *, the prosecutor * * * *shall commence a civil action to forfeit that property* under section 2981.05[.]" Id. (Emphasis added.)

{¶ 35} Those general observations aside, certain portions of several of these statutes are directly relevant to resolving the forfeiture issue in this appeal.

{¶ 36} Two of the purposes of R.C. Chapter 2981 are:

{¶ 37} " * * *

{¶ 38} "(2) To ensure that seizures and forfeitures of instrumentalities are proportionate to the offense committed;

{¶ 39} "(3) To protect third parties from wrongful forfeiture of their property[.]" R.C. 2981.01(A).

{¶ 40} R.C. 2981.01(B)(6) defines "instrumentality," stating:

{¶ 41} " 'Instrumentality' means property *otherwise lawful to possess that is used in or intended to be used in an offense.* An 'instrumentality' may include, but is not limited to, a firearm, a mobile instrumentality, a computer, a computer network, a computer system, computer software, a telecommunications device, money, and any other means of exchange." (Emphasis added.)

{¶ 42} Pertinent here is R.C. 2981.02, on which the state bases its argument. It provides as follows:

{¶ 43} "(A) The following property is subject to forfeiture to the state or a political subdivision *under either the criminal * * * process in section 2981.04 of the Revised Code or the civil process in section 2981.05 of the Revised Code:*

{¶ 44} " * * *

{¶ 45} "(3) An instrumentality that is used in or intended to be used in the commission or facilitation of any of the following offenses when the use or

intended use, consistent with division (B) of this section, is sufficient to warrant forfeiture under this chapter:

{¶ 46} "(a) A felony;

{¶ 47} " * * *

{¶ 48} "(B) *In determining whether an alleged instrumentality was used in or was intended to be used in the commission or facilitation of an offense* or an attempt, complicity, or conspiracy to commit an offense in a manner sufficient to warrant its forfeiture, *the trier of fact shall consider the following factors the trier of fact determines are relevant:*

{¶ 49} "(1) Whether the offense could not have been committed or attempted but for the presence of the instrumentality;

{¶ 50} "(2) Whether the primary purpose in using the instrumentality was to commit or attempt to commit the offense;

{¶ 51} "(3) The extent to which the instrumentality furthered the commission of, or attempt to commit, the offense." (Emphasis added.)

{¶ 52} From the plain language of the foregoing statutes, it is apparent that R.C. 2981.01(B)(6) merely defines what an "instrumentality" is within the larger forfeiture scheme. The purpose of R.C. 2981.02 is to identify the categories of "property subject to forfeiture," i.e., contraband, proceeds, and instrumentalities. But that language in itself provides no authority to order forfeiture absent compliance with the requirements and timelines of either the criminal process in R.C. 2981.04 or the civil process in R.C. 2981.05. Subsections (A)(3)(a) and (B)(1) through (3) of that statute do nothing more than establish the predicate offense (i.e., a "felony") and the criteria by which the "trier of fact" may determine, during an appropriate hearing, whether a particular firearm was used as an "instrumentality" in committing that offense.[4]

{¶ 53} In addition to Chapter 2981, R.C. 2941.1417 became effective on the same date. That statute mandates the inclusion of a forfeiture specification in a charging instrument, such as an indictment. It states as follows:

---

4. R.C. 2981.04(B) distinguishes between the criminal proceeding based on the underlying offense(s) and the forfeiture proceeding. See also *State v. Cruise*, 185 Ohio App.3d 230, 2009-Ohio-6795, 923 N.E.2d 702, at ¶ 11. Where the indictment contains the required specification, that section states that following a guilty plea or conviction, "the trier of fact shall determine whether the person's property shall be forfeited." Likewise, R.C. 2981.04(A)(3) distinguishes between "issues of the guilt of the alleged offender" and "whether property specified as subject to forfeiture should be forfeited." We also note that R.C. 2981.08(A) states, "In a criminal forfeiture action, the defendant has the right to trial by jury." See also R.C. 2981.04(B) ("If the trier of fact is a jury * * * ").

{¶ 54} "(A) *Property is not subject to forfeiture in a criminal case unless* the indictment * * * charging the offense specifies, to the extent it is reasonably known at the time of filing, the nature and extent of the alleged offender's interest in the property, a description of the property, and, *if the property is alleged to be an instrumentality, the alleged use or intended use of the property in the commission or facilitation of the offense.* The specification shall be stated at the end of the body of the indictment, count, or information and shall be in substantially the following form:

{¶ 55} "SPECIFICATION (or SPECIFICATION TO THE FIRST COUNT). The grand jurors (or insert the person's or prosecuting attorney's name when appropriate) further find and specify that (set forth the alleged offender's interest in the property, a description of the property subject to forfeiture, and any alleged use or intended use of the property in the commission or facilitation of the offense).

{¶ 56} "(B) The trier of fact shall determine whether the property is subject to forfeiture. * * *." (Emphasis added.)

{¶ 57} Nothing in R.C. 2981.02 operates to avoid the prohibition on forfeiture in R.C. 2941.1417, where the indictment fails to contain the required specification identifying the property to be forfeited and alleging how it was used as an "instrumentality" in committing the offense. Further, that prohibition is substantially repeated in R.C. 2981.04(A)(1), delineating the initiation of the criminal forfeiture process. That section states:

{¶ 58} "Property described in division (A) of section 2981.02 of the Revised Code *may be forfeited under this section only if the* * * * *indictment* * * * *charging the offense* * * * *contains a specification of the type described in section 2941.1417 of the Revised Code* that sets forth all of the following to the extent it is reasonably known at the time of the filing:

{¶ 59} "(a) The nature and extent of the alleged offender's * * * interest in the property;

{¶ 60} "(b) A description of the property;

{¶ 61} "(c) *If the property is alleged to be an instrumentality,* the alleged use or intended use of the property in the commission or facilitation of the offense." (Emphasis added.)

{¶ 62} Because it may not always be clear at the time of indictment whether, or to what extent, particular property was used in a crime so as to be an "instrumentality" amenable to forfeiture, R.C. 2981.04(A)(2) provides:

{¶ 63} "If any property is not reasonably foreseen to be subject to forfeiture at the time of filing the indictment * * *, the trier of fact still may return a verdict

of forfeiture concerning that property in the hearing described in division (B) of this section *if the prosecutor, upon discovering the property to be subject to forfeiture, gave prompt notice of this fact to the alleged offender * * * under Criminal Rule 7(E)* [.]" (Emphasis added.) [5]

{¶ 64} Because R.C. 2941.1417 and the foregoing provisions of Chapter 2981 refer to each other, and because all relate to the same general subject, these statutes must be read in pari materia. *Maxfield v. Brooks* (1924), 110 Ohio St. 566, 144 N.E. 725. Moreover, in construing statutes, the Supreme Court long ago held that "the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conservancy Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834.

{¶ 65} R.C. 2941.1417 and 2981.04(A)(1) and (2) are clearly mandatory in requiring (1) notice to the "alleged offender" that the state will seek forfeiture of property believed to be an instrumentality used in committing the offense *and* (2) in requiring that such notice be given either by a specification in the indictment when filed or afterward, "upon discovering" that the property's use as an instrumentality renders it subject to forfeiture. Within the criminal process of R.C. 2981.04 generally, the procedures, rights, and obligations of the parties in pursuing or defending against forfeiture, and the rights of third parties with an alleged interest in the property (and the procedure for adjudicating their claims), are similarly mandatory, except when a permissive intent is explicit.

{¶ 66} As applied to the firearms at issue here, there is little question that the trial court's order was a de facto forfeiture that was inconsistent with these statutory requirements. First, in issuing its order, the court did not cite as authority any provision of R.C. Chapter 2981. Second, none of the counts in the indictment, including the rape count, referred to any of the surrendered firearms, much less alleged any to be an "instrumentality" in the form of the specification required by R.C. 2941.1417 and 2981.04(A)(1). *State v. Rogers,* 2010-Ohio-5543, 2010 WL 4621516, at ¶ 34; *State v. Coleman,* 8th Dist. No. 91058, 2009-Ohio-1611, 2009 WL 866896, ¶ 75–76. See also R.C. 2981.04(B) ("If a person pleads guilty to * * * an offense * * * *and the * * * indictment * * * contains a specification* covering property subject to forfeiture under section 2981.02 * * *." (Emphasis added.)) Between the filing of the indictment and the sentencing hearing,

---

5. R.C. 2981.01(B)(13) defines "property subject to forfeiture" as including "contraband and proceeds and *may include instrumentalities as provided in this chapter.*" (Emphasis added.) The emphasized language further indicates that property is not *presumed* to be an "instrumentality" until so proven "as provided" elsewhere within Chapter 2981—notably under the criminal process of R.C. 2981.04 et seq.

nothing in the record indicates that the prosecutor furnished "prompt notice" to defense counsel that the firearms were being made "subject to forfeiture," notwithstanding the lack of the specification. *State v. Haymond,* 5th Dist. No. 2009–CA–00078, 2009-Ohio-6445, 2009 WL 4682145, ¶ 35; *State v. Pollard,* 8th Dist. No. 93002, 2010-Ohio-908, 2010 WL 877525, ¶ 13. Indeed, there was no attempt at all to initiate forfeiture under either the criminal or civil process.

{¶ 67} Even assuming that such notice had been given in this case, the prosecutor did not demonstrate, by a preponderance of the evidence at the postplea hearing envisioned in R.C. 2981.04(B), that any of the firearms met the test for an "instrumentality" using the criteria in R.C. 2981.02(B)(1) through (3). During sentencing, the prosecutor merely requested destruction of *all* the firearms previously surrendered, as if that followed automatically from the guilty plea. Under R.C. 2941.1417 and the applicable provisions of R.C. Chapter 2981, it did not. Given these deficiencies in complying with the statute, the trial court had no authority to order the firearms destroyed.[6] *Coleman; Haymond.*

{¶ 68} Both parties agree that Brimacombe's felony conviction prohibits him from acquiring, owning, possessing, using, or carrying firearms. His acquisition of that disability, however, is distinct from the consequence of forfeiture under R.C. 2981 et seq. His conviction also did not render the seven firearms in this case "contraband," although the trial court appeared to treat them as if they were. See *Cleveland v. Fulton,* 178 Ohio App.3d 451, 2008-Ohio-4702, 898 N.E.2d 983, ¶ 27–36; *Dayton v. Boddie* (1984), 19 Ohio App.3d 210, 211, 19 OBR 354, 484 N.E.2d 171. Thus, their disposition remains an issue, notwithstanding Brimacombe's admitted legal disability.

{¶ 69} Even when a valid forfeiture has been accomplished with respect to the *offender's* ownership or possessory interest, R.C. 2981.04(C) states that "[t]he property vests with the state or political subdivision *subject to the claims of third*

---

6. During the sentencing hearing, the victim's mother alleged that Brimacombe carried "a gun" while making threatening remarks during the time he abused her son. On appeal, the state contends that this statement and nothing more was sufficient to support the trial court's order to destroy *all* the firearms. R.C. 2929.19(B)(1) directs that such statements be considered in imposing a sentence for the underlying offense; however, statements made in that context are not substitutes for the statutory pleading and proof requirements for forfeiture. Nor are they sufficient to adjudicate the rights of third parties claiming an interest in property the state seeks to forfeit. As noted, R.C. 2981.04(A)(3) explicitly distinguishes between issues relating to the defendant's guilt and "whether property specified as subject to forfeiture should be forfeited." Moreover, as the record indicates, the state was fully aware of the firearms after the court's initial bond order and their surrender in January 2010 to the custody of the Sylvania Police Department. From the state's interaction with the victim's mother, it was presumably aware of her claim about Brimacombe's use of this firearm in relation to the acts for which he was indicted. Thus, the state had ample opportunity to give the postindictment notice under R.C. 2981.04(A)(2) and to pursue as "instrumentalities" subject to forfeiture any of the firearms that were provably used as such. R.C. 2981.04(B).

*parties."* (Emphasis added.) Id. R.C. 2981.04(D), (E), and (F) address the rights of third parties and "[a]ny person, *other than the offender* * * *, who asserts a legal interest in the property that is the subject of the order." (Emphasis added.) See R.C. 2981.04(E)(1).[7]

{¶ 70} Presumably, attorney Sass was attempting, as a third party, to assert the rights of some member of Brimacombe's family, seeking return of the firearms held by the Sylvania Police Department. On remand, the issue of their appropriate disposition will need to be addressed.

{¶ 71} Accordingly, the second assignment of error is well taken.

{¶ 72} We further find that the order to destroy the firearms is severable from the court's sentencing entry of June 2, 2010, and thus only that order is reversed and vacated. This case is remanded for further proceedings consistent with this decision in order to determine the proper disposition of the firearms.

{¶ 73} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is hereby affirmed in part and reversed in part. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

HANDWORK and PIETRYKOWSKI, JJ., concur.

---

7. R.C. 2981.04(D) requires the prosecutor to attempt "to identify any person with an interest in the [forfeited] property * * * [and] give notice of the forfeiture that remains *subject to the claims of third parties and proposed disposal of the forfeited property to any person known to have an interest in the property."* Id. (Emphasis added.) R.C. 2981.04(E) allows such interested parties to assert their claims by way of petition or affidavit. *State v. Jamison,* 2010-Ohio-965, 2010 WL 892082, at ¶ 29. They are entitled to have the validity of their alleged interest in the property adjudicated during the hearing specified in R.C. 2981.04(E)(3), at which both parties may present evidence.