[Cite as *State v. Burnette*, 2017-Ohio-8424.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

       Appellee

v.

Leslie Allen Burnette

       Appellant

Court of Appeals Nos. L-16-1272
L-16-1273

Trial Court Nos. CR0201602371
CR0201602417

**DECISION AND JUDGMENT**

Decided: November 3, 2017

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Julie Jacek Bookmiller, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Appellant, Leslie Burnette, appeals the November 3, 2016, and November 14, 2016 judgments of the Lucas County Court of Common Pleas sentencing him to an aggregate prison term of 17 years and 6 months. For the following reasons, we affirm.

## I. Background

{¶ 2} Burnette's consolidated appeal arises from his guilty pleas and resultant sentences in two separate cases. On July 27, 2016, Burnette was indicted in case No. CR0201602371 ("case 1") on one count of kidnapping in violation of R.C. 2905.01(A)(4) and (C), a first-degree felony, and one count of gross sexual imposition in violation of R.C. 2907.05(A)(1) and (C), a fourth-degree felony. On August 3, 2016, the grand jury issued a second indictment in case No. CR0201602417 ("case 2") charging Burnette with one count of kidnapping in violation of R.C. 2905.01(A)(4) and (C), a first-degree felony, and one count of rape in violation of R.C. 2907.02(A)(1)(c) and (B), a first-degree felony.

{¶ 3} On October 24, 2016, Burnette pleaded guilty in case 1 to the gross sexual imposition charge and pleaded guilty in case 2 to amended charges of attempted kidnapping and attempted rape, both second-degree felonies. On October 31, 2016, the trial court sentenced Burnette to the maximum sentence for each crime and ordered that the sentences be served consecutively. The court also dismissed the kidnapping charge in case 1. The sentencing entry in case 1 was journalized on November 3, 2016, and the sentencing entry in case 2 was journalized on November 14, 2016.

{¶ 4} Burnette now appeals the trial court's decisions, raising two assignments of error:

> 1) The Trial Court's sentence was contrary to law.
>
> 2) The Trial Court was in error for accepting a guilty plea.

2.

## II. Facts

### A. Plea Hearing

{¶ 5} On October 24, 2016, the trial court held a plea hearing. Burnette agreed to plead guilty in case 1 to the gross sexual imposition charge and to plead guilty in case 2 to amended charges of attempted kidnapping and attempted rape, both second-degree felonies. The convictions would require Burnette to register as a Tier I child-victim offender for the gross sexual imposition charge and a Tier III child-victim offender for the attempted rape and attempted kidnapping charges. In exchange, the state agreed to dismiss the kidnapping count in case 1.

{¶ 6} At the beginning of the plea hearing, the trial court elicited the following factual information regarding the plea agreements:

> THE COURT: What's the evidentiary basis concerning the resolution in [case 1], please?
>
> [PROSECUTOR]: Your Honor, in both of these cases, these are children around the ages of 15 years of age. However, they both have learning disabilities and/or more severe disabilities, cognitive disabilities. That being said, in the interest of justice for these children and what their parents' wish is is [sic] why this case is being pled in such a manner.
>
> THE COURT: And is that the same rationale for any resolution less than the original charges in [case 2] as well?

3.

[PROSECUTOR]: Yes, Your Honor. That particular victim in that case is 15 years of age but, however, on the cognitive level of a six-year-old.

{¶ 7} During the hearing, the court asked Burnette if he was threatened or promised anything not in the plea agreements to induce him to enter guilty pleas. Burnette replied "no" to both questions. The court also reviewed the plea agreements with Burnette and asked him if he understood what they said. Burnette said that he did.

{¶ 8} But when the court asked Burnette if he had sufficient time to consult with his attorney about the proposed pleas, Burnette responded that he was not sure and expressed some reservations about pleading guilty. The court told Burnette that his response "sets off alarm bells." Despite Burnette's desire to "just go ahead and take care of it right now" and his claim that "I don't need any more time," the court engaged Burnette and counsel in a discussion to ensure that Burnette was willingly offering his guilty pleas. During the discussion Burnette stated that he wanted to pursue the plea because he did not "see it getting any better" and the state planned to rescind the plea offers after that day. When Burnette told the court that he had additional questions about the plea offers, the judge stated that "I'm not comfortable accepting this plea because I feel that Mr. Burnette has some reservations about the status of the charges, his case, the evidence, whether he really wants to tender these pleas." At this point, the court stopped the hearing to give Burnette additional time to speak with his attorney.

4.

{¶ 9} When the plea hearing resumed approximately 20 minutes later, Burnette told the court that all of his questions had been answered.  He also stated that he did not need more time with his lawyer and he wanted to proceed with pleading guilty.  Satisfied that Burnette was willing to proceed, the court resumed the plea colloquy.  During the colloquy, the court explained that pleading guilty would be Burnette's sworn admission that he committed the crimes.  The court also explained that Burnette was giving up his right to a trial by jury, right to confront witnesses, right to compulsory process, and right against self-incrimination.  The court explained each right before asking Burnette if he understood the rights he was giving up.  Burnette replied "yes" to each question.

{¶ 10} Next, the court reviewed the three charges to which Burnette intended to plead guilty.  For each offense, the court addressed the maximum prison term and fine; the terms of postrelease control and penalties for violating postrelease control; and Burnette's child-victim offender status and registration requirements.  The court also explained that it could run the sentences for each charge concurrently.  Burnette responded "yes" each time the judge asked him if he understood a term of his guilty pleas.  After explaining Burnette's child-victim offender registration, residential restrictions, and community notification requirements in more detail, the court asked, "And knowing that you're going to have these classification obligations, is it still your intent to tender these pleas of guilty in both of these two cases?", to which Burnette replied, "Yes, Your Honor."

5.

{¶ 11} The court went on to explain the limits of an appeal from a guilty plea, the restrictions on Burnette's future ability to own firearms, and the requirement that he provide a DNA sample. Burnette said that he understood all three statements.

{¶ 12} After going through all of the relevant information, the court again asked Burnette if he had any questions about the plea agreements for the court or his attorney. Burnette replied "no." Burnette also stated that he did not have any questions about the plea forms he signed.

{¶ 13} When the trial court asked Burnette how he was pleading to each count, Burnette responded "guilty." When the court asked why he was pleading guilty to gross sexual imposition, the following exchange occurred:

> THE COURT: Why are you pleading guilty to that charge?
>
> THE DEFENDANT: Because I feel it would be worse for me if I took it to trial.
>
> THE COURT: Well, that may well be the situation. But that's not acceptable.
>
> THE DEFENDANT: I'm guilty of it.
>
> THE COURT: I will accept that.

The judge and Burnette had a similar exchange when the judge asked why Burnette was pleading guilty to attempted kidnapping:

6.

THE COURT: Why are you pleading guilty to that?

THE DEFENDANT: Because I feel it would be worse for me if I took it to trial.

THE COURT: That may be part of your rationale. Why else?

THE DEFENDANT: Because I'm guilty of it.

THE COURT: I will accept that.

When the court asked Burnette why he was pleading guilty to attempted rape, he simply responded "Because I'm guilty of it."

{¶ 14} The court accepted Burnette's pleas, found him guilty of gross sexual imposition, attempted kidnapping, and attempted rape, and set the case for sentencing.

### B. Sentencing Hearing

{¶ 15} On October 31, 2016, the trial court held Burnette's sentencing hearing. At the hearing, the trial court first reviewed with Burnette the terms of his Tier I and Tier III child-victim offender classifications, including the registration requirements, residential restrictions, and community notification requirements.

{¶ 16} Next, Burnette's attorney addressed the court. He stated that Burnette's criminal record included some misdemeanor and traffic offenses, but that Burnette had no history of sexual offenses or felonies (other than one felony conviction for failing to pay child support). Counsel also stated that Burnette accepts what he did and is sorry for his actions. Counsel expressed Burnette's concern for his aging mother, particularly if Burnette were sentenced to a long prison term.

7.

{¶ 17} Following his attorney's statement, Burnette briefly addressed the court to apologize to his victims and their families.

{¶ 18} Finally, the state addressed the court. The state provided the court with letters from the victim in case 1 and her mother. The prosecutor read the victim's letter, which outlined the distress that Burnette's actions had caused the victim. The mother of the victim in case 2 also addressed the court. She said that her child experienced severe mental and emotional harm because of Burnette's actions. The mother told the court that the victim experiences panic attacks when she sees a man who looks like Burnette, spent several days at a psychiatric hospital, has nightmares, has trouble sleeping, has migraines, has experienced increased depression, has frequent flashbacks, and has become an angry and aggressive person.

{¶ 19} The state noted that Burnette had pleaded guilty to charges involving two separate victims and that the incidents underlying the two indictments occurred within two weeks of each other. The state indicated that the victims were children who were around 15 years old at the time and have cognitive disabilities. In case 2, the state told the court that Burnette deceived the victim by asking her to babysit even though Burnette does not have children. After the victim was in his car, Burnette attempted to have intercourse with the victim.

{¶ 20} After hearing from counsel, the court reviewed the record. The judge noted that Burnette's criminal history is "relatively benign." The judge also noted that Burnette's conduct had "horrifically impacted" the victim in case 2, who has the mental

8.

capacity of a six-year-old. The court specifically found that Burnette had committed the worst forms of the offenses of which he was convicted. The court further stated that Burnette's apology to the victims seemed insincere and it specifically found that Burnette did not express any genuine remorse. Rather, the court believed Burnette was only upset that he might not see his aging mother again if he received a long prison term.

{¶ 21} The court stated on the record that it considered the principles and purposes of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, and the felony sentencing guidance factors under R.C. 2929.13. Thereafter, the court sentenced Burnette to the maximum sentence of 18 months in prison for the gross sexual imposition conviction, the maximum sentence of 8 years for the attempted kidnapping conviction, and the maximum sentence of 8 years for the attempted rape conviction. The court ordered all of the sentences to be served consecutively for a total of 17 years and 6 months in prison. Pursuant to R.C. 2929.14, the court found that consecutive sentences are necessary to protect the public from future crime, they are not disproportionate to the seriousness of Burnette's conduct, the crimes were part of a course of continuing conduct, and the harm caused was so great or unusual that no single term of imprisonment adequately reflects the seriousness of Burnette's conduct. Before concluding, the court again reminded Burnette of the mandatory term of postrelease control that he will be subject to when he is released from prison.

9.

### III. Law and Analysis

### A. Burnette's Pleas were Entered Knowingly, Voluntarily, and Intelligently

{¶ 22} We address Burnette's second assignment of error first. In his second assignment of error, Burnette contends that the trial court erred by accepting his guilty plea. He argues that the trial court did not comply with Crim.R. 11 and that he did not understand the nature of the charges against him. The state counters that the trial court adhered to the requirements of Crim.R. 11(C) and that the totality of the circumstances shows that Burnette understood the charges.

{¶ 23} Under both the United States and Ohio Constitutions, a guilty plea must be made knowingly, intelligently, and voluntarily to be valid. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). Therefore, before accepting a defendant's guilty plea, the trial court must address the defendant personally to inform him that he waives certain constitutional rights by pleading guilty and to determine that he understands the nature of the charges against him, the maximum penalty he is facing, and the effects of his plea. *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 41; Crim.R. 11(C)(2). The underlying purpose of Crim.R. 11(C) is to ensure that the information a defendant needs to make a voluntary and intelligent decision about pleading guilty is conveyed to him. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

{¶ 24} There are two levels of compliance with Crim.R. 11(C): strict and substantial. The court must strictly comply with the rule when explaining the defendant's

constitutional rights or the plea is invalid under the presumption that it was not knowingly and voluntarily entered. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31; *State v. Rinehart*, 6th Dist. Wood No. WD-11-030, 2013-Ohio-3372, ¶ 17. The court need not use the exact language in the rule, but must explain the rights in a manner that is reasonably intelligible to the defendant. *Rinehart* at ¶ 17, citing *Ballard* at paragraph two of the syllabus.

{¶ 25} For non-constitutional rights, on the other hand, substantial compliance is sufficient. *Clark* at ¶ 31; *Rinehart* at ¶ 18; and *State v. Ragusa*, 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373, ¶ 4, 5. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The rule requires that the court determine whether the defendant entered a voluntary plea in light of an understanding of the key facts; it does not require that the court personally notify the defendant of these facts. *State v. Acosta*, 6th Dist. Wood No. WD-15-066, 2016-Ohio-5698, ¶ 10. Compliance with Crim.R. 11(C) generally does not require the trial court to recite each element of the charges against the defendant. *State v. Gallant*, 6th Dist. Erie No. E-12-033, 2013-Ohio-3953, ¶ 9, citing *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 57. Nor does Crim.R. 11(C) require that a factual basis for guilty pleas be placed on the record. *State v. Blevins*, 6th Dist. Ottawa No. OT-16-013, 2016-Ohio-8382, ¶ 18.

11.

{¶ 26} The transcript of the plea hearing establishes that the trial court engaged in a full and complete colloquy with Burnette concerning his pleas, as required by Crim.R. 11(C)(2). The trial court strictly complied with Crim.R. 11(C)(2)(c) by providing careful explanations of each of the constitutional rights Burnette waived by entering pleas, and Burnette unequivocally indicated that he understood each right and understood that he was waiving those rights by pleading guilty.

{¶ 27} The trial court also substantially complied with Crim.R. 11(C)(2)(a) and (b). Although the court did not read the elements of each offense to Burnette, it discussed each charge with him. The court ensured that Burnette knew the degree of each offense, the maximum penalty and fine for each offense, the child-victim offender classification attached to each offense, and the consequences of being classified as a child-victim offender. Additionally, Burnette signed plea papers that contain the statement "I understand the nature of these charges and the possible defenses I might have," and he told the trial court that he understood the plea papers.

{¶ 28} Burnette alleges that his statement to the trial court that his lawyer was unable to answer one of his questions shows that he did not understand the charges against him. But nothing in the transcript indicates that any questions Burnette had about his plea deal were related to the nature of the charges against him. Rather, his statements show that he was hesitant to plead guilty. When Burnette expressed his reluctance to enter the pleas and indicated that he might still have questions, the court stopped the plea hearing and gave Burnette more time to consult with his attorney. After Burnette's case

12.

was back on the record, Burnette told the court that his attorney had answered his questions and that he had been given sufficient time to consult with his lawyer. Additionally, Burnette twice told the court that he did not have any further questions for the court or his attorney regarding the pleas. The record shows that Burnette was willing to proceed when his case was recalled and does not support Burnette's argument that he did not understand the ramifications of pleading guilty.

{¶ 29} Burnette also contends that he told the court that he was pleading guilty to avoid a worse outcome at trial, but never acknowledged guilt. This is unsupported by the record. The trial court warned Burnette that entering guilty pleas would be his sworn admission of guilt of each offense, and Burnette told the trial court that he was "guilty of it" for each crime. Although Burnette expressed some reservations about pleading guilty, he was then given additional time to consult with his attorney and ultimately chose to proceed and admitted to the crimes. This does not show that his pleas were involuntary.

{¶ 30} In sum, the record demonstrates that the trial court complied with the requirements of Crim.R. 11(C) and that, based on the totality of the circumstances, Burnette understood the implications of his pleas and the rights he waived. We find, therefore, that Burnette's pleas of guilty were made voluntarily, knowingly, and intelligently. Accordingly, Burnette's second assignment of error is not well-taken.

## B. Burnette's Sentence is not Contrary to Law

{¶ 31} Burnette's first assignment of error asserts that his sentence is contrary to law. He claims that the trial court erred by finding that none of the factors in R.C.

13.

2929.12(D) showing less likelihood of recidivism applied to Burnette, despite acknowledging Burnette's "relatively benign" criminal record. The state contends that the sentences are lawful because the trial court considered Burnette's limited criminal history and all other required statutory factors before imposing the sentences.

{¶ 32} We review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

{¶ 33} Burnette asserts that his sentence is clearly and convincingly contrary to law under R.C. 2953.08(G)(2)(b) because the trial court did not consider all of the recidivism factors in R.C. 2929.12(D) in reaching its sentencing decision. We note that Burnette does not challenge the trial court's compliance with the applicable statutes listed in R.C. 2953.08(G)(2)(a).

{¶ 34} As we recognized in *State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 16, we still use *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912,

14.

896 N.E.2d 124, in determining whether a sentence is clearly and convincingly contrary to law. In *Kalish*, the Supreme Court of Ohio held that a sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *Kalish* at ¶ 18.

{¶ 35} Burnette does not argue that the trial court misapplied postrelease control, imposed a sentence outside the statutory ranges for second- and fourth-degree felonies, or failed to consider the principles and purposes of sentencing. He only objects to the trial court's weighing of the seriousness and recidivism factors in R.C. 2929.12.

{¶ 36} A sentencing court is "not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender." *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 11 (6th Dist.). In fact, no specific recitation is required; merely stating that the court considered the statutory factors is sufficient. *Id.* Moreover, the trial court is not required to give any particular weight or emphasis to any factor; it is merely required to consider the statutory factors. *State v. Delmanzo*, 11th Dist. Lake No. 2007-L-218, 2008-Ohio-5856, ¶ 23. We also note that the trial court's failure to discuss a particular factor does not mean that the court did not consider that factor. *State v. Moss*, 11th Dist. Ashtabula No. 2016-A-0047, 2017-Ohio-1507, ¶ 54.

15.

**{¶ 37}** Here, the record makes clear that the trial court considered all applicable statutory factors. Specifically, the court stated at the sentencing hearing that

I have considered your record. I've considered the statements made here in open court. I've considered the victim impact statements as well as the principles and purposes of sentencing as I'm required to consider under 2929.11.

I've also balanced the seriousness and recidivism factors as I'm obligated to do under 2929.12, and I've considered all factors under 2929.13.

Additionally, the sentencing entries both state that

The Court has considered the record, oral statements, any victim impact statement, and general offense reports prepared, as well as the principles and purposes of sentencing under R.C. 2929.11, and has balanced the seriousness, recidivism and other relevant factors under R.C. 2929.12.

* * *

The Court further finds the defendant is not amenable to community control and that prison is consistent with the purposes of R.C. 2929.11.

**{¶ 38}** The trial court acknowledged Burnette's prior criminal record during the sentencing hearing, characterizing it as "relatively benign." When the court specifically discussed the factors in R.C. 2929.12, it stated that "I'm to consider factors under

2929.12(D) that work to your benefit. But there are no such factors." Rather than indicating that the trial court failed to consider Burnette's limited criminal record as a mitigating factor, the court's statement indicates that it chose to give Burnette's criminal record no mitigating weight. That is, the court did not ignore Burnette's record; it took Burnette's record into account and was not persuaded that his record, when balanced against the other facts of his crimes, demonstrated that Burnette was less likely to reoffend.

{¶ 39} The transcript of the sentencing hearing and the judgment entries of conviction and sentence indicate that the trial court considered all of the required statutory factors before it imposed sentence on Burnette. Because the trial court complied with the statutory requirements, we find that Burnette's sentence is not clearly and convincingly contrary to law. Accordingly, Burnette's first assignment of error is not well-taken.

### IV. Conclusion

{¶ 40} Based on the foregoing, the November 3, 2016, and November 14, 2016 judgments of the Lucas County Court of Common Pleas are affirmed. Burnette is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

17.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, P.J.

_____
Christine E. Mayle, J.                              JUDGE
CONCUR.

_____
JUDGE