[Cite as *State v. Parks*, 2019-Ohio-2366.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-18-1138

　　　　Appellee                              Trial Court No. CR0201801408

v.

Ryan Craig Parks                            **DECISION AND JUDGMENT**

　　　　Appellant                            Decided:  June 14, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Sarah Haberland, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant Ryan Parks appeals the May 31, 2018 judgment of the Lucas

County Court of Common Pleas.  The trial court sentenced him to 12 months in prison

following his guilty plea and conviction for breaking and entering, in violation of R.C.

2911.13(A) and (C).  Parks alleges that, because he could not identify his mental health

conditions with sufficient particularity, the trial court should not have accepted his guilty plea. He also alleges that his 12-month sentence is contrary to law. Finding no error in the conviction or sentence, we affirm the judgment.

**Facts and Procedural History**

{¶ 2} The indictment in this case describes three separate criminal incidents. On the morning of February 18, 2018, Parks was observed driving a pickup truck that was reported stolen earlier that day. While stopped at an intersection in downtown Toledo, Parks offered to sell some tools to a person who was stopped next to Parks. The driver declined. Later, when the driver learned of the stolen truck, he reported the incident to law enforcement. Police showed the driver a photo array that included a picture of Parks, and he identified Parks as the person driving the stolen vehicle. This offense formed the basis for Count 3 of the indictment.

{¶ 3} On February 25, 2018, victim No. 2 made a police report of a breaking and entering of his detached garage. Victim No. 2 learned of the event when he noticed a broken door to his garage and viewed video footage from surveillance cameras. The footage showed a person entering the garage the night before, at 11:45 p.m., and then leaving with a snow blower and a welder. Victim No. 2 posted a still shot of the person on social media, and Parks was identified as the person in the photo. Victim No. 2 presented the photo to police, and it matched a picture of Parks in a criminal database. This offense formed the basis for Count 2 of the indictment.

2.

**{¶ 4}** On February 26, 2018, victim No. 3 contacted the police from Florida to report that his neighbor had called him and told him that he, the neighbor, had found personal property (two heaters) belonging to victim No. 3 in an alley. The neighbor returned the heaters to victim No. 3's home, where he found that the door to a detached shed had been damaged. It appeared to the neighbor that a snowblower had been taken. Police questioned a different neighbor, who reported that he had observed Parks pushing victim No. 3's snowblower down the street a few days before. This offense formed the basis for Count 1 of the indictment.

**{¶ 5}** Parks was indicted on March 7, 2018 on two counts of breaking and entering, in violation of R.C. 2911.13(A) and (C), both felonies of the fifth degree (Counts 1 and 2) and a single count of receiving stolen property, in violation of R.C. 2913.15(A) and (C), a felony of the fourth degree (Count 3). During his pretrial incarceration, Parks was granted three medical furloughs, two in April and one in May.

**{¶ 6}** At the change-of-plea hearing on May 7, 2018, the parties agreed that Parks would plead guilty to one count of breaking and entering (Count 1), and the state would nolle prosequi Counts 2 and 3, although the state requested an order of restitution as to all counts, totaling $2,600. Before accepting the plea, the court advised Parks of his rights, as set forth in Crim.R. 11. Of particular relevance to this case, it inquired as to whether Parks was "clear-headed." Parks confirmed that he was, and his attorney concurred. The court also advised Parks of the constitutional rights he was waiving, the effect of his plea and the maximum sentence that could be imposed, including that he could serve up to 12

3.

months in prison.  After acknowledging all of the above, in open court and in writing, the trial court accepted Parks' plea and found him guilty.   Noting that "some naughtiness [had] occurred during [Parks' medical] furloughs," the trial court ordered a "new" presentence investigation ("PSI").[1]   The court's comment was in response to a report by jail officials that Parks was suspected of smuggling marijuana into the jail when returning from his medical furloughs.  Although there was no direct evidence of smuggling, "there was always * * * an odor of marijuana in a group of people with this defendant after he was furloughed."

{¶ 7} A sentencing hearing was held on May 30, 2018.  Through counsel, Parks acknowledged that the contents of the PSI were accurate and that Parks suffers from an "out of control" substance abuse problem and a lack of impulse control.  As described by his counsel, Parks is "a nice guy.  Doesn't do anything violent, but if there's Percocet to be found, if there's any snowblowers that he can sell, he just can't stop [himself].  * * * [T]he impulse is just too strong."

{¶ 8} Following victim impact statements offered by victim No. 3 and his wife, the trial court reviewed Parks' criminal history, which included eight prior felonies, 30

---

[1] A previous PSI had been conducted just two months before while Parks awaited sentencing in two other cases (case Nos. CR0201703139 and CR0201702268).  In the former, Parks pled guilty to attempted burglary, in violation of R.C. 2923.02 and 2911.12(A)(2) and (D), a felony of the third degree and failure to comply, in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a felony of the third degree.  In the other, Parks was found guilty of unauthorized use of a motor vehicle, a misdemeanor of the first degree. Parks was sentenced in these cases, by separate orders, at the same time as the instant case.  Parks did not appeal either judgment.

4.

prior misdemeanor convictions, and previous incarcerations. The court then sentenced Parks to 12 months in prison, restitution in the amount of $2,600, various costs, and three years of discretionary postrelease control. Through appellate counsel, Parks raises the following assignments of error for our review:

> I. The Trial Court erred when it accepted a guilty plea that was not knowingly or intelligently by Defendant, as to Count one, Breaking and Entering. [Sic.]
>
> II. The Trial Court Abused its Discretion at Sentencing, by Failing to Sentence According to the Law Under R.C. 2929.14.
>
> III. The Trial Court Abused its Discretion at Sentencing by Failing to Access all of the factors in accordance with R.C. 2929.12. [Sic.]

**Law and Analysis**

{¶ 9} In his first assignment of error, Parks argues that his inability to describe "his complete mental health diagnosis," rendered his plea involuntary and, therefore, the trial court should not have accepted it.

{¶ 10} "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily. Failure on any of those points renders enforcement of the plea unconstitutional under both the United States Constitution and the Ohio Constitution." *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). In considering whether a plea was knowingly, intelligently and voluntarily entered, an appellate court examines the totality of the circumstances through a de novo review of the

record to ensure that the trial court complied with constitutional and procedural safeguards. *State v. Meade*, 4th Dist. Scioto No. 17CA3816, 2018-Ohio-3544, ¶ 6.

{¶ 11} Crim.R. 11(C)(2) governs the acceptance of guilty pleas in felony cases. The underlying purpose of the rule is to convey information to the defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981). If a trial court fails to comply with Crim.R. 11, then the reviewing court must determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights. *State v. Clark*, 119 Ohio St. 3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 30 (Explaining that a trial court must strictly comply when advising a defendant of his constitutional rights and must substantially comply when advising of all other rights).

Here, Parks has not alleged a specific violation of Crim.R. 11(C)(2). Instead, he argues that, because he could not "verbalize [his] mental health conditions [with] specificity," the trial court could not have been certain that he entered his plea knowingly. The transcript reveals the following conversation with regard to Parks' mental functioning at the time of the plea:

> THE COURT: All right. Are you under the influence of any medications, drugs or alcohol, which would interfere with your ability to understand what we are doing?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Otherwise are you clear-headed this morning?

6.

THE DEFENDANT: Yes, Your Honor.

THE COURT: [Counsel], I know you met with your client at some length. Would you agree he's clear-headed today?

THE DEFENDANT: I do, Your Honor. * * *

THE COURT: Mr. Parks, do you now or have you ever suffered from any mental health or disease?

THE DEFENDANT: Have I suffered? I'm on, yeah, I'm on a case. Yeah, I'm on a caseload for mental health. I'm on a couple of different medications for my mental health, but I'm clear now.

THE COURT: What kind of mental health problems do you have?

THE DEFENDANT: I got anxiety, bipolar, I've been ADHD, but I think they call it something different when you are an adult now, and severe depression.

THE COURT: Okay. And are you taking medication now for those conditions?

THE DEFENDANT: Yes, sir.

THE COURT: And are you taking those medications strictly in accordance with the instructions given to you by your doctor?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.

{¶ 12} First, contrary to Parks' claim in his brief, he *did* identify his mental health conditions with particularity, i.e. anxiety, bipolar disorder, attention deficit hyperactivity disorder (ADHD), and severe depression. Moreover, "[t]he mere fact that a defendant suffer[s] from a mental illness or [is] taking psychotropic medication under medical supervision when he enter[s] a guilty plea is not an indication that his plea was not knowing and voluntary, that the defendant lacked mental capacity to enter a plea or that the trial court otherwise erred in accepting the defendant's guilty plea." *State v. McClendon*, 8th Dist. Cuyahoga No. 103202, 2018-Ohio-2630 (citing cases); *see also State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 71 ("The fact that a defendant is taking * * * prescribed psychotropic drugs does not negate his competence to stand trial."). Furthermore, a defendant is not presumed to be incompetent solely because he is receiving or has received treatment for mental illness. R.C. 2945.37(F); *see also State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986) ("A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting counsel.").

{¶ 13} When we consider the exchange between the court and Parks, we find no evidence that he lacked the requisite mental capacity to enter into a guilty plea or that the trial court should not have accepted the plea. To the contrary, Parks and his counsel asserted that Parks was "clear headed," and the record, as a whole, supports that conclusion. That is, Parks actively participated in the proceedings, and he acknowledged the rights he was waiving by pleading guilty, including the potential penalties he could

8.

receive. We note the absence of any argument by Parks that there was anything about the proceedings that he did not understand and/or that some mental infirmity clouded his judgment. Parks' history of mental health issues, without more, is insufficient to render his plea involuntary. *Accord State v. Dowdell*, 9th Dist. Summit No. 25930, 2012-Ohio-1326, ¶ 6-10 (Rejecting defendant's claim that trial court erred in accepting his guilty plea without a mental health evaluation where trial court engaged in an extensive dialogue with the defendant at the plea hearing and defendant's answers demonstrated that he understood the questions the trial court directed to him). We find that Parks' guilty plea was knowingly, intelligently and voluntarily made and that the trial court did not err in accepting his guilty plea. Accordingly, we find that Parks' first assignment of error is not well-taken.

{¶ 14} In his second and third assignments of error, Parks challenges his 12-month prison sentence as being contrary to law under R.C. 2929.11 and 2929.12, respectively. We discuss the assignments of error together. [2]

{¶ 15} We first address the standard of review in sentencing cases and Parks' claim that the trial court "abus[ed] its discretion" in fashioning a sentence. "[A]ppellate courts may not apply [an] abuse-of-discretion standard in sentencing-term challenges."

---

[2] We regard Parks' reference to "R.C. 2929.14" in the heading of his second assignment of error to be a typographical error inasmuch as the entirety of his argument pertains to the application of R.C. 2929.11.

9.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 10. Instead, we review sentencing challenges under R.C. 2953.08(G)(2). The statute allows an appellate court to increase, reduce, or otherwise modify a sentence or vacate the sentence and remand the matter for resentencing only if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).

{¶ 16} A sentence is not clearly and convincingly contrary to law where the trial court has considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, properly applied postrelease control, and imposed a sentence within the statutory range. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. *See also State v. Tammerine*, 6th Dist. Lucas No. L-13-1081, 2014-Ohio-425, ¶ 15-16 (Noting that while R.C. 2953.08(G)(2) prohibits courts from applying the abuse of discretion standard, as set forth in *Kalish,* that *Kalish* "may still be utilized [for purposes of] determining whether a sentence is clearly and convincingly contrary to law."). If the appellate court finds that a sentence is not clearly and convincingly contrary to law, it may vacate or modify the sentence "only if the

10.

appellate court finds by clear and convincing evidence that the record does not support the sentence." *Marcum* at ¶ 23.

{¶ 17} Here, Parks does not challenge the trial court's compliance with the sentencing statutes identified in subsection (a) of R.C. 2953.08(G)(2), nor does he claim that the trial court misapplied postrelease control or imposed a sentence outside the statutory range for a fifth-degree felony. *See* R.C. 2929.14(A)(5) (The range of sentences that a trial court may impose for a fifth-degree felony "shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months."). Instead, Parks claims that his sentence is "contrary to law" because the trial court failed to "use 'minimum sanctions,'" required by R.C. 2929.11(A) and further failed to consider "all of the factors" set forth in R.C. 2929.12.

{¶ 18} A trial court that sentences a defendant for a felony offense, "shall be guided by the overriding purposes of felony sentencing: * * * to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). When considering the appropriate sentence, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* The sentence must be reasonably calculated to achieve those purposes "commensurate with and not demeaning

11.

to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶ 19} To comply with the principles and purposes of sentencing, as set forth above, the trial court must consider the factors set forth in R.C. 2929.12. As this court has previously explained,

> R.C. 2929.12 is a guidance statute. It sets forth the seriousness and recidivism criteria that a trial court "*shall consider*" in fashioning a felony sentence. Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense. Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes. While the phrase "shall consider" is used throughout R.C. 2929.12, the sentencing court is not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender. Indeed, no specific recitation is required. Merely stating that the court considered the statutory factors is enough.

*State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 11 (6th Dist.) citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38 and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶ 20} Parks complains that the trial court failed to consider "all" of the R.C. 2929.12 factors, but the record demonstrates otherwise. In fact, the court specifically

12.

stated that it had "considered the record, the oral statements, the victim impact statement, the PSI, the overriding purposes and principles of sentencing under 2929.11, and *the seriousness, recidivism and other factors under R.C. 2929.12.*" (Emphasis added.) The court's May 31, 2018 sentencing entry sets forth a nearly identical statement. The court's assertion that it considered the statutory factors is sufficient. *Brimacombe.*

{¶ 21} Alternatively, Parks claims that the trial court failed to consider the factors indicating that his conduct was "less serious than conduct normally constituting the offense," i.e. the R.C. 2929.12(C) factors. Parks puts forth no argument that any of those factors is present in his case, and, based upon our review of the record, we find that none apply. That is, there is no evidence that victim No. 3 "induced or facilitated the offense," (Section (C)(1)) or that, in committing the offense, Parks "acted under strong provocation," (Section (C)(2)). Likewise, there is no evidence of "substantial grounds to mitigate [Parks'] conduct" (Section (C)(4)). Finally, the record *does* indicate that, in committing the offense, Parks did "physical harm to * * * property" (Section (C)(3)). Because none of the factors of R.C. 2929.12(C) is present in this case, it cannot be said that the court erred in failing to consider the lack of seriousness of Parks' crime. And, as argued by the state, the record supports the opposite view. The wife of victim No. 3 testified at sentencing that Parks violated her "sense of security" and caused her to feel "the need to carry a gun into [her] own backyard." Psychological harm caused by the offender is a relevant factor in determining an appropriate sentence. R.C. 2929.12(B)(2).

13.

**{¶ 22}** Finally, Parks complains that the court, in imposing the maximum sentence "held no regard to the addiction that [he] faces" in contravention of R.C. 2929.11(A)'s mandate to impose "minimum sanctions." We disagree. The court observed that Parks was "contrite" and agreed with Parks' concession that he needed substance abuse treatment. On the other hand, when Parks blamed his criminal behavior on his addiction to heroin and pills, the court observed that Parks' criminal history began *before* his use of illegal drugs. To that, Parks conceded, "I've been in trouble my whole life, Your Honor."

**{¶ 23}** The court determined that prison was warranted under R.C. 2929.13(B)(1)(b)(x). (Trial court "has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence * * * if any of the following apply: * * * [t]he offender * * * previously had served [] a prison term."). The contents of Parks' PSI, which the court reviewed during sentencing, indicate that Parks served multiple prison terms in previous cases, including a one-year prison term in 2013 (for failure to appear) and another in 2011 (for failure to comply with an order or signal of a police officer). As further noted by the court, Parks' extensive criminal history includes "eight prior felonies as an adult and thirty – three zero – misdemeanors." Merely because the trial court did not find Parks' stated reason, i.e., his addiction, as a compelling reason to impose a lesser sentence does not render his sentence contrary to law. *Accord State v. Filious*, 8th Dist. Cuyahoga No. 104287, 2016-Ohio-8312, ¶ 10 (Rejecting argument that the court failed to

14.

consider R.C. 2929.11 and 2929.12 "simply because it did not agree with the victim's [and defendant's] recommended sentence.").

{¶ 24} Based upon the record in this case, we do *not* find clear and convincing evidence that the record does not support the trial court's decision to sentence Parks to 12 months in prison. Therefore, we may not vacate or modify the sentence. *Marcum*, 146 Ohio St.3d 513, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23.

**Conclusion**

{¶ 25} We find that the trial court did not err in accepting Parks' guilty plea. We also find that the trial court's decision to impose the maximum prison term was appropriate to protect the public and to punish Parks for his offense and that the court properly considered the seriousness and recidivism factors in this case. We find that the trial court complied with all applicable sentencing requirements when it sentenced him to prison and that Parks' sentence is not clearly and convincingly contrary to law under R.C. 2953.08(G)(2). Accordingly, his assignments of error are not well-taken.

{¶ 26} Based on the foregoing, the May 31, 2018 judgment of the Lucas County Court of Common Pleas is affirmed. Parks is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                    _____
                                                        JUDGE
Thomas J. Osowik, J.

Christine E. Mayle, P.J.          _____
CONCUR.                                          JUDGE

                                                _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.