[Cite as *State v. Brown*, 2022-Ohio-3683.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                  Court of Appeals No.  L-21-1220

      Appellee                          Trial Court No.  CR0202101316

v.

Jacob Brown                               **DECISION AND JUDGMENT**

      Appellant                          Decided:  October 14, 2022

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Brenda J. Majdalani, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Jacob Brown, from the judgment issued by the Lucas County Common Pleas Court, sentencing him to thirty months in prison on one count of attempt to commit felonious assault.  For the reasons that follow, we affirm.

## Assignments of Error

1.  Appellant did not knowingly, voluntarily and intelligently enter his plea in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article One Sections Ten and Sixteen of the Ohio State Constitution.

2.  Appellant was denied effective assistance of trial counsel as guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United State[s] Constitution when trial counsel failed to request a competency evaluation prior to his plea hearing.

## Background

{¶ 2} On March 4, 2021, appellant was charged by way of indictment with one count of felonious assault, in violation of R.C. 2903.11(A)(1) and (D).  On August 30, 2021, he pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to an amended charge of attempt to commit felonious assault, in violation of R.C. 2923.02 and R.C. 2903.11(A)(1) and (D), a felony of the third degree. Pursuant to the plea agreement, the state agreed to remain silent at sentencing.

{¶ 3} At the plea hearing, appellant was asked whether he could read, write and understand the English language, to which he replied "I can read, but I have a hard time writing."  The trial court then went through the Crim.R. 11 advisements including an explanation of the nature of the plea and the charge, the possible penalties, the maximum

2.

penalty, the possibility of post-release control, and the rights appellant was waiving by pleading guilty.  During this exchange, the trial judge told appellant that he could stop her if he had any questions, and repeatedly asked appellant if he still wished to make the plea.  Each time appellant responded affirmatively.   The trial judge specifically stated that she did not know how she was going to sentence appellant.  Appellant was asked if he believed he was entering the guilty plea to protect himself from higher charges or a stricter penalty if he went to trial, to which he responded "Yes."  He stated that he was satisfied with his attorney's "advice, counsel, and competence" and that no one made any threats or promises to him to get him to enter the plea.  Appellant appropriately responded to the judge's questions and continued to affirm his wish to make the plea.  Sentencing was then continued until September 15, 2021.

{¶ 4} Appellant failed to appear at his sentencing hearing, and a capias was issued.  At the request of appellant, the court withdrew the warrant and scheduled a sentencing hearing for September 22, 2021.  For a second time, appellant failed to appear at his sentencing hearing, and a capias was again issued.  Appellant was eventually arrested and sentencing was held on October 28, 2021.

{¶ 5} At the sentencing hearing, appellant's attorney addressed the court prior to sentencing, and stated, inter alia, that his client was "dealing with some pretty significant mental health issues as well as physical health issues" and that these issues were the "reasons that he did not come to court."  Appellant's attorney also informed the court that

3.

appellant was facing new charges in municipal court for domestic violence and failure to comply, but that he did not have any felony convictions at the time of sentencing.

{¶ 6} Appellant then communicated with the court directly. Relevant to this appeal, appellant made the following statements:

> I'm very sorry for everything, and I was just so scared after I got out of the hospital, I didn't really know what to do.
>
> And I have an abusive baby mama that I will no longer have to deal with no more, so I won't be having to deal with not being able to take my psych medication, she won't be able to steal it. So when my mom gets me back in her custody, I can go back to the Zepf Center and go to programming.
>
> My baby momma beat my wife up and they charged me with DV, now I'm scared for my life because I don't know what's going to happen.

{¶ 7} After these statements, the court sentenced appellant to 30 months in prison and found that appellant was "not able to pay cost of prosecution and fees based on certain mental health and intellectual deficits" that appellant's attorney had pointed out in a sentencing memorandum. The court also requested a "full mental health evaluation * * * including determination if he's suffering from autism" to "make sure that the prison has access to know the proper placement for safety purposes."

4.

{¶ 8} After the court issued appellant's sentence, appellant requested, and was granted, a chance to speak. Appellant then strenuously objected to his sentence, claiming that his attorney had assured him he would get "probation" if he signed the plea form, and that that was "entrapment." The court reminded him that he failed to appear for sentencing, that that failure to appear was considered when fashioning a sentence, and that he would have the ability to have "judicial release looked at." Appellant asked whether he would be "available for shock," to which the court responded that he "could be" and that he would be screened for it in prison.

{¶ 9} The following exchange then occurred:

THE [APPELLANT]: I was told I would receive probation, or else I would have boxed this up, done the whole thing. I would rather appeal it and go back to the F2, bring it back to court, because I feel like I'm being entrapped. I honestly do.

I'm having a nervous breakdown as I'm standing here. I suffer from multi-personality disorder.

THE COURT: So let me just say that I will have to make the record right now that you're standing here, so that the record will show that you're standing here calmly with the proper cognition.

THE [APPELLANT]: I'm trying to be calm right now. I'm just maintaining.

THE COURT: I understand. I'm going to place it on the record - -

THE [APPELLANT]: I'm very upset.

THE COURT: - - that at this point, you're calmly delivering this information. So with regard to the allegations of nervous breakdown, I'm not seeing those things. * * *

* * *

THE [APPELLANT]: Is there any way I can get a shorter prison term? Because that's three years for not showing up to court.

THE COURT: No, it's 30 months for the sentence and for the injuries to the victim. That's what the sentence is.

THE [APPELLANT]: I didn't even touch the victim, Your Honor. He was one of my friends that came to my house after the thing. He's been at my house multiple times after that.

I never touched him, I never hurt him, I never did anything to him. I'm going for almost three years for doing nothing, just for standing there while Xander beat him up because I didn't want to get in the middle of gang activity. He said if I did, I would be killed.

{¶ 10} Appellant then continued to argue that his attorney had told him that he would get "probation" if he signed the plea form, and additionally stated that his attorney told him he did not need to sign the plea form. His attorney asserted

6.

that he had told appellant that community control was an option and that it "looked pretty good at that point in time" and he adamantly denied telling appellant not to read the plea agreement. Then, at the end of the sentencing hearing, appellant verbally attacked his attorney and threatened to "beat the fuck out of [him]."

{¶ 11} Appellant appealed.

### First Assignment of Error

{¶ 12} Appellant requests that we vacate his guilty plea on the basis that his plea was not knowingly, voluntarily, and intelligently made. He also argues that there is a question of fact, pursuant to Crim.R. 11(C)(2)(b), regarding whether he understood "the effect of the plea of guilty or no contest," or alternatively, if he understood that "by entering the plea he was waiving his right to trial, to confront witnesses, for compulsory process of obtaining witnesses in his own defense, and to require the state to prove his guilt beyond a reasonable doubt." Appellant, through his attorney, did not object at trial, and thus, we are limited to plain error review.

{¶ 13} "A guilty plea must be made knowingly, intelligently, and voluntarily to be valid under both the United States and Ohio Constitutions. To ensure that a defendant enters a plea knowingly, intelligently, and voluntarily, the trial court is required to engage a defendant in a plea colloquy pursuant to Crim.R. 11." (Citations omitted.) *State v. Whitman*, 2021-Ohio-4510, 182 N.E.3d 506, ¶ 14 (6th Dist.). This rule applies equally to *Alford* pleas. *See State v. Hopings*, 6th Dist. Lucas No. L-18-1038, 2019-Ohio-1486, ¶ 7.

7.

Traditionally, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 16. [1]

{¶ 14} "In determining whether a plea was knowingly, intelligently, and voluntarily made, this court 'examines the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards.'" *State v. Gumm*, 6th Dist. Erie No. E-21-044, 2022-Ohio-2287, ¶ 16 quoting *State v. Parks*, 6th Dist. Lucas No. L-18-1138, 2019-Ohio-2366, ¶ 10.

{¶ 15} Appellant acknowledges that "the court made the appropriate inquiries" pursuant to Crim.R. 11, but contends that he did not understand his plea and that it was not intelligently, voluntarily and knowingly entered into. As support, appellant points to his low level of education, difficulty in writing the English language, mental health issues, his statements that he was promised probation, and his statements that he had a problem with access to his medication. Appellant also believes it to be significant that he was found incompetent to stand trial in another case approximately a month after the sentencing in this case.

{¶ 16} Initially, we note that any finding of incompetency entered in another case is not in the record before us, and therefore cannot be considered. *See State v. Wallace*, 6th Dist. Wood No. WD-11-031, 2012-Ohio-2675, ¶ 15, citing *State v. Ishmail*, 54 Ohio

---

[1] In the criminal plea context, there are two exceptions to the prejudice component that are not relevant here. *Id.* at ¶ 14 – 15.

8.

St.2d 402, 405, 377 N.E.2d 500 (1978), at syllabus ("A reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.").

{¶ 17} When determining whether a plea is knowing and voluntary, our focus is on "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12. Here, the record shows, and appellant concedes, that the trial court complied with the mandates of Crim.R. 11. Further, it appears that appellant understood the consequences of his plea. Appellant appropriately responded to the court's questions and repeatedly affirmed he still wished to maintain his plea. The fact that appellant stated he had difficulty writing the English language would not have affected appellant's understanding of the consequences of the plea. Additionally, as support for his argument that his plea was not knowing and voluntary, appellant references statements made in a hearing that occurred at his sentencing hearing almost two months after the plea hearing. These statements do not provide support for a claim that the plea was not voluntarily, knowingly, and intelligently made and, in the case of appellant's statements that he was promised probation, are contradicted by statements made by both appellant's attorney and the attorney for the state.

{¶ 18} Appellant also raises his competency as a basis for overturning his plea. Although we cannot consider the finding of incompetency entered in a separate case,

9.

appellant has raised other issues relating to whether he was competent to plea, including comments regarding his mental health and the fact that the court ordered a full mental health evaluation. Thus we will consider appellant's competency in this context

{¶ 19} "The conviction of a defendant who is not competent to enter a plea violates due process of law." *State v. D-Bey*, 8th Dist. Cuyahoga No. 109000, 2021-Ohio-60, ¶ 39, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155. However, a defendant is not incompetent to plead guilty merely because he suffers from a mental illness or an intellectual disability. *State v. McMillan*, 2017-Ohio-8872, 100 N.E.3d 1222, ¶ 29 (8th Dist.), citing *State v. Calabrese*, 8th Dist. Cuyahoga No. 104151, 2017-Ohio-7316, ¶ 16. The competence necessary to enter a guilty plea is the same as that necessary to stand trial – "[t]he defendant must have 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and must have 'a rational as well as factual understanding of the proceedings against him.'" *D-Bey* at ¶ 39, quoting *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 56. (Additional citations omitted.)

{¶ 20} We presume a defendant to be competent "unless it is demonstrated by a preponderance of the evidence that the defendant is incapable of understanding the nature and objective of the proceedings against him or her or is incapable of assisting in his or her defense." *D-Bey,* at ¶ 40, citing R.C. 2945.37(G). Moreover, we must "give extreme deference to a trial court's determination that a defendant is competent to knowingly,

10.

intelligently, and voluntarily enter a guilty plea." *State v. Brown*, 10th Dist. Franklin No. 18AP-112, 2018-Ohio-4984, ¶ 8, citing *State v. Grant*, 10th Dist. Franklin No. 12AP-650, 2013-Ohio-2981, ¶ 10.

{¶ 21} Here, there is no evidence that, at the time he entered the plea, appellant did not understand the meaning of the proceedings against him nor is there any evidence that appellant was unable to assist in his own defense.

{¶ 22} Additionally, the judge, who was a witness to appellant's behavior at both the change of plea hearing and the sentencing hearing and thus, was in a superior position to assess appellant's competency, found appellant had an understanding of the nature of the charge, the effect of his plea and the maximum penalty involved. The court also found that appellant made a knowing, intelligent and voluntary waiver of his rights.[2]

{¶ 23} For these reasons, we find appellant was competent to enter the plea. We therefore do not find that appellant has established that his plea was not made voluntarily, knowingly and intelligently.

{¶ 24} Appellant's first assignment of error is therefore not well-taken.

---

[2] Appellant points to the fact that the court ordered "a full mental health evaluation" as evidence that his mental health issues "were sufficiently apparent" to the trial court. However, the trial court explained that this evaluation was to include a determination as to whether appellant suffers from autism, and was ordered to "make sure that the prison has access to know the proper placement for safety purposes."

11.

## Second Assignment of Error

{¶ 25} Appellant contends that his counsel was ineffective for not requesting a competency evaluation prior to his plea hearing. Appellant points to his statement at sentencing that he "felt like he was having a nervous breakdown," as well as his threatening behavior toward his attorney at sentencing. Appellant also refers to "the disparity of [his] statements to the victim's," his statement that he had been deprived of his "psych medication," and his statements that he was promised community control.

{¶ 26} We presume that properly licensed attorneys are competent. *State v. Gross*, 6th Dist. Lucas No. L-22-1001, 2022-Ohio-2434, ¶ 16. "[I]n order to prevail on an ineffective assistance of counsel claim, it must be demonstrated both that trial counsel's performance fell below an objective standard of reasonableness, and that, but for the established deficiency, the outcome of the case would have been different." *State v. Brown*, 6th Dist. Wood Nos. WD-21-002 and 003, 2021-Ohio-3762, ¶ 22, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Because 'effective assistance' may involve different approaches or strategies, our scrutiny of trial counsel's performance 'must be highly deferential' with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Whitman*, 2021-Ohio-4510, 182 N.E.3d 506, at ¶ 51, quoting *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

{¶ 27} The statements relied upon by appellant in support of his argument that his counsel was ineffective for failing to request a competency hearing *prior to his plea hearing* occurred at sentencing, *after the plea hearing*. Therefore, these statements cannot be the basis for finding ineffective assistance. In addition, as discussed above, we have not found any evidence that appellant was not competent at the time he entered his plea. Without such evidence, we cannot find his counsel was ineffective for failing to request a competency hearing, and further, we cannot find that the outcome would have been different.

{¶ 28} We therefore find appellant's second assignment of error not well-taken.

{¶ 29} The judgment of the Lucas County Common Pleas Court is affirmed. Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       _____
                 JUDGE

Christine E. Mayle, J.

Myron C. Duhart, P.J.       _____
CONCUR.              JUDGE

              _____
              JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.