[Cite as *State v. Atchison*, 2018-Ohio-2419.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-76 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-413 |
| | : | |
| ROBIN ATCHISON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of June, 2018.

. . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Clark County Prosecutor's Office, Appellate Division, 50 E. Columbia Street, 4th Floor, Springfield, Ohio 45501
      Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 W. Second Street, Suite 1717, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Robin Atchison pled guilty in the Clark County Common Pleas Court to a Bill of Information charging a single count of forgery, in violation of R.C. 2913.31(A)(2), a felony in the fourth degree. After a presentence investigation, the trial court sentenced Atchison to 15 months in prison, and she was ordered to pay $28,810.33 in restitution. Atchison appeals from her conviction, challenging her sentence.

## I.     Facts and Procedural History

{¶ 2} The prosecutor's summary attached to the presentence investigation ("PSI") reveals the following facts:

{¶ 3} On March 24, 2014, Heartland Federal Credit Union ("Heartland") received notice that it had incurred losses of $7,984 from four counterfeit cashier's checks, which were written to individuals in Arizona, Virginia, California and Florida. Heartland later learned that 444 counterfeit checks were presented for payment throughout the United States, which totaled $1,030,735.14. Locally, Heartland incurred a loss of $21,972 from the counterfeit checks that were cleared.

{¶ 4} An investigation by Heartland led to Atchison, who had opened an account and obtained a legitimate cashier's check. The history of Atchison's conduct revealed that she would purchase cashier's checks and, subsequently, counterfeit checks would be presented by "secret shoppers" to be cleared at Heartland.

{¶ 5} On November 14, 2014, Heartland filed a police report with the German Township Police Department, which requested assistance from the Ohio Bureau of Criminal Investigation ("BCI").

{¶ 6} Atchison stated to BCI Special Agent Cooper and German Township Police

Officer Barga that she had lost her primary source of employment, so she searched for a new job where she could work from home. She found an internet company and was hired to work with a contact, whom she knew as "Gary." This work-from-home job required her to go to local banks and obtain cashier's checks (in a nominal amount) from those banks. She would then scan those legitimate checks and email the scanned copies to "Gary", who would send templates of the checks (in a much larger amount) back to Atchison along with names and addresses of people to whom Atchison was instructed to send them. Atchison would then print the checks onto watermark check stock that she purchased from a local supply store. Finally, Atchison would send the forged checks to the names provided to her by "Gary" along with a letter offering a potential "secret shopper" opportunity to the recipients.

{¶ 7} This "secret shopper" opportunity involved individuals who responded to an advertisement to participate in a job where they would receive an agreed amount of money for evaluating various retail establishments. The secret shoppers received checks that, unbeknownst to them, were counterfeit. The secret shoppers were to deposit the checks in their personal bank accounts. Once deposited, the secret shoppers would then withdraw a predetermined amount of money for their services and send the remainder of the money to a third party through Western Union. Eventually, when the counterfeit checks would be returned, the secret shoppers' personal accounts would be debited for the returned bad check, and they would incur a loss for the money that was forwarded through Western Union. The exceptions to this would be when Heartland failed to timely return the checks or when the checks were cashed.

{¶ 8} Atchison mailed approximately 90 checks a day, four days per week, to

recipients beginning in January 2014. Each check had an amount of at least $2,000. She initially received $450 every week from "Gary," which increased to $600, and which she obtained through Western Union. The sender of the payment was always different, according to Atchison. According to the PSI and its attachments, a subpoena was issued for Western Union transfers, which indicated that Atchison received money by wire transfer from various places, including Turkey and the Philippines. Overall, Atchison received $10,349.99 by Western Union wire transfers from February 21, 2014 through February 26, 2015.

{¶ 9} Atchison stated to the investigators that she was aware that her conduct was "probably illegal." "Gary" told Atchison that her work was legal, but Atchison told "Gary" that she wanted to stop working for the internet company. Atchison stated that "Gary" sent her a picture of the front of her house and threatened to hurt her and her family if she quit the job or told anyone about her involvement in the scheme.

{¶ 10} Atchison's computer was imaged and analyzed in BCI's Cyber Crimes Section, which revealed a conversation between Atchison and "Gary" where "Gary" questioned Atchison about her interaction with the police. A scanned copy of a two dollar cashier's check from Huntington National Bank was also located on Atchison's computer.

{¶ 11} Atchison reached a plea agreement with the State and pled guilty to a single count of forgery, a felony of the fourth degree, related to her conduct. In exchange for the plea, the State agreed that a PSI would be prepared and considered before sentencing.

{¶ 12} The PSI indicated that Atchison was 49 years old, divorced, and had no prior adult or juvenile criminal record. It indicated that she had three adult children and that her Ohio Risk Assessment Score was low. It also stated that Atchison was raised by

her parents; there were no reports of physical or sexual abuse, and no environment of drug or alcohol abuse.

{¶ 13} As discussed above, the trial court sentenced Atchison to 15 months in prison.

{¶ 14} Atchison raises two assignments of error on appeal.

{¶ 15} Atchison's first assignment of error is that "Appellant's sentence is contrary to law because the Court did not adequately follow the requisite statutory procedures prior to imposing sentence upon appellant."

{¶ 16} Atchison's second assignment of error is that "Appellant's sentence is contrary to law because it is excessive, an unnecessary burden on government resources, and the Court did not adequately follow the requisite statutory procedures prior to imposing sentence upon appellant."

## II. Standard of Review

{¶ 17} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law.

## III. Sentencing

{¶ 18} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-

Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard,* 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis,* 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 19} R.C. 2929.11 requires trial courts to be guided by the overriding principles of felony sentencing. Those purposes are "to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). The court must "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.*

{¶ 20} R.C. 2929.11(B) provides that "[a] sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's

military service record, if any.

{¶ 21} Generally, a sentence is not contrary to law when it is within the authorized statutory range and the trial court states that it has considered the principles and purposes of sentencing and the seriousness and recidivism factors. *State v. Smith*, 2d Dist. Montgomery No. 26307, 2016-Ohio-1269, ¶ 25.

{¶ 22} Atchison contends that the court did not expressly state what it considered when deciding the sentence, nor did the court state that it followed the purposes and principles of sentencing set forth in R.C. 2929.11 and 2929.12.

{¶ 23} The trial court addressed the purposes and principles of sentencing in its judgment entry by stating that it considered the "record, oral statements of counsel, the defendant's statements and the purposes and principles of sentencing under R.C. 2929.11." Even though the trial court did not expressly state at sentencing what it considered prior to sentencing, "[o]n a silent record, a trial court is presumed to have considered the statutory purposes and principles of sentencing, and the statutory seriousness and recidivism factors." *State v. Goldblum*, 2d Dist. Montgomery No. 25851, 2014-Ohio-5068, ¶ 50.

{¶ 24} R.C. 2929.13(B)(1) provides that the trial court shall sentence offenders to community control for nonviolent felonies of the fourth degree. However, the trial court has discretion to impose a prison term on an offender who commits a non-violent fourth or fifth degree felony and committed the offense "for hire or as part of an organized criminal activity." R.C. 2929.13(B)(1)(b)(ix). The term "organized criminal activity" is not defined in R.C. Chapter 2929. Courts have generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or

with extensive planning, the number of people involved, and the nature of the charges in determining whether there was "an organized criminal activity." *See, e.g., State v. Orms,* 10th Dist. Franklin No. 14-AP-750, 2015-Ohio-2870*; State v. Coran,* 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller,* 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff,* 10th Dist. Franklin Nos. 97APA08-1054 and 97APA08-1056, 1998 WL 120304 (Mar. 17, 1998). When a prison sentence for a felony in the fourth degree is permitted, the trial court is authorized to impose a sentence of, at minimum, six months, and at maximum, eighteen months. R.C. 2929.14(A)(4).

**{¶ 25}** The trial court found that Atchison committed an offense for hire or as part of an organized criminal activity. This was supported by the facts that Atchison scanned copies of legitimate cashier's checks, sent those checks to "Gary," and subsequently mailed out forged checks to numerous recipients. The Court was permitted to impose a prison sentence on Atchison. The trial court's 15-month sentence was within the statutory range. Since Atchison had not previously been convicted of a felony, the trial court could have granted community control. However, because Atchison committed a fourth degree felony and was involved in an organized criminal activity, the trial court had the discretion to impose a prison term. R.C. 2929.13(B)(1)(b)(ix).

**{¶ 26}** Atchison further contends that "[her] sentence is contrary to law because it is excessive, an unnecessary burden on government resources, and the Court did not adequately follow the requisite statutory procedures prior to imposing sentence upon appellant."

**{¶ 27}** A sentencing court is not required to elevate consideration of resource burdens over the seriousness and recidivism factors of R.C. 2929.12. *State v. Reeves,*

10th Dist. No. 14AP-856, 2015-Ohio-3251, ¶ 9. "Where the interests of public protection and punishment are well served by a prison sentence, the claim is difficult to make that the prison sentence imposes an unnecessary burden on government resources." *State v. Bowshier*, 2d Dist. Clark No. 08-CA-58, 2009-Ohio-3429, ¶ 14.

**{¶ 28}** Factors "indicating that the offender's conduct is more serious than conduct normally constituting the offense" include (1) the physical or mental injury to the victim was exacerbated because of the physical or mental condition of the victim, (2) the victim suffered serious physical, psychological, or economic harm as a result of the offense, (3) the offender held a public office or position of trust in the community, and the offense related to that office or position, (4) the offender was obliged by the nature of his profession or occupation to prevent the offense or bring others committing it to justice, (5) the offender's professional reputation or occupation was used to facilitate the offense or is likely to influence the future conduct of others, (6) the offender's relationship with the victim facilitated the offense, (7) the offender committed the offense for hire or as a part of an organized criminal activity, and (8) in committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion. R.C. 2929.12(B).

**{¶ 29}** Factors indicating that an offender's conduct is less serious than conduct normally constituting the offense include (1) the victim induced or facilitated the offense, (2) in committing the offense, the offender acted under strong provocation, (3) in committing the offense, the offender did not cause or expect to cause physical harm to any person or property, (4) there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(C).

**{¶ 30}** The trial court could have concluded that Atchison's offense was more serious than conduct normally constituting the offense. As previously mentioned, Atchison committed the offense as part of an organized criminal activity. She not only provided "Gary" with legitimate cashier's checks over the internet, but she also mailed what she believed to be forged checks to approximately 90 different recipients a day, four days a week. The scheme also caused Heartland to lose $21,972 from cleared counterfeit checks. In total, 444 counterfeit checks were presented throughout the United States and amounted to $1,030,735.14.

**{¶ 31}** Although Atchison claimed that she was threatened by "Gary" in order to continue her role in the scheme, she admitted that before she tried to quit, she knew that her conduct was "probably illegal."

**{¶ 32}** Given the record before us, we cannot conclude that the 15-month sentence was clearly and convincingly unsupported by the record or contrary to law.

**{¶ 33}** Atchison's assignments of error are overruled.

## IV.    Conclusion

**{¶ 34}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.

Copies mailed to:

Andrew P. Pickering
Adam J. Arnold
Hon. Douglas M. Rastatter