[Cite as *State v. Boswell*, 2019-Ohio-2949.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                          Court of Appeals No. E-18-053

     Appellee                                     Trial Court No. 2017-CR-037

v.

William Boswell                                    **DECISION AND JUDGMENT**

     Appellant                                    Decided:  July 19, 2019

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Anthony A. Battista III, Assistant Prosecuting Attorney,
for appellee.

Danielle C. Kulik and Kenneth R. Bailey, for appellant.

* * * * *

**ZMUDA, J.**

## I.  Introduction

{¶ 1} Appellant, William Boswell, appeals the judgment of the Erie County Court of Common Pleas, sentencing him to 34 months in prison after he entered a guilty plea to two counts of theft from a person in a protected class.  Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On January 10, 2017, a 23-count indictment was filed with the trial court, charging appellant with eight counts of theft from a person in a protected class in violation of R.C. 2913.02(A)(3) and (B)(3), felonies of the fourth degree, five counts of theft from a person in a protected class in violation of R.C. 2913.02(A)(3) and (B)(3), felonies of the third degree, two counts of attempted theft from a person in a protected class in violation of R.C. 2923.02 and 2913.02(A)(3) and (B)(3), felonies of the fifth degree, five counts of theft from a person in a protected class in violation of R.C. 2913.02(A)(2) and (B)(3), felonies of the third degree, two counts of theft from a person in a protected class in violation of R.C. 2913.02(A)(2) and (B)(3), felonies of the fourth degree, and one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) and (B)(1), a felony of the first degree.

{¶ 3} The foregoing indictment related to a scheme carried out by appellant from July 2016 through September 2016, in which appellant defrauded 13 elderly victims of over $60,000 by offering to provide asphalt at a reduced price, performing the work in a substandard manner, and then dramatically increasing the price at the time of completion.

{¶ 4} On July 31, 2017, appellant appeared before the trial court for arraignment. Appellant entered a plea of not guilty, and the matter proceeded through pretrial discovery and plea negotiations. As a result of successful plea negotiations, appellant agreed to plead guilty to two counts of theft from a person in a protected class in violation of R.C. 2913.02(A)(3) and (B)(3), felonies of the fourth degree. In exchange

2.

for his guilty plea, and in an effort to facilitate appellant's payment of restitution to the victims in this case, the state agreed to dismiss the remaining charges and recommend five years of community control, with a 36-month prison sentence to be reserved and applied in the event that appellant violated the terms of his community control. At a subsequent plea hearing held on May 18, 2018, the foregoing plea agreement was discussed and the trial court accepted appellant's guilty plea following a Crim.R. 11 colloquy. The matter was continued for sentencing and the trial court ordered a presentence investigation report.

{¶ 5} Appellant's sentencing hearing was held on August 23, 2018. At the start of the hearing, the trial court reiterated the terms of appellant's plea agreement. The court then indicated its consideration of the purpose and principles of sentencing, as well as its examination of the impact statements provided by the victims, and informed appellant of his rights to appeal under Crim.R. 32. Thereafter, the trial court explained appellant's postrelease control obligations, and turned to the issue of mitigation.

{¶ 6} Both appellant and his counsel addressed the trial court in mitigation. Appellant's counsel focused his statement on the fact that appellant had been compliant with the court's orders and had demonstrated good faith by bringing a $22,000 check to sentencing to begin making restitution to the victims. Appellant addressed the court personally and explained that he was intent upon paying back the victims. Appellant stressed that he meant to do the victims no harm, and stated that he "didn't think [he] was doing [anything] wrong." For its part, the state asked the trial court to follow the

3.

recommended sentence of community control in an effort to achieve the "primary goal" of making the elderly victims financially whole.

{¶ 7} After receiving statements in mitigation, the trial court again referenced the principles and purposes of sentencing under R.C. 2929.11, as well as the seriousness and recidivism factors under R.C. 2929.12. The court informed appellant that it had "thoroughly" considered the presentence investigation report. According to the report, appellant was previously convicted of a number of offenses, including home improvement fraud in 2003. As to this offense, the court noted that the victims in this case were particularly vulnerable as a product of their advanced age and health conditions.

{¶ 8} According to the trial court, the victims reported in their impact statements that they were coerced, targeted, intimidated, and harassed by appellant. One such victim reported that although she was quoted a fee of $400 to perform certain services, appellant demanded that she pay $7,000 for the work once it was completed. Because appellant had frightened her, the victim wrote him a postdated check, which she later cancelled. When appellant was notified of the cancelled check, he returned to the victim's home "with a look of utter rage on his face." According to the trial court, the victim reported that she was so frightened by appellant's actions that she has not been able to get a full night of sleep.

{¶ 9} Based upon the conduct detailed in the presentence investigation report, the trial court found no credibility in defense counsel's statement that appellant was "just

4.

trying to provide for [his] family" or appellant's statement that he did not think he was doing anything wrong. Addressing appellant, the trial court stated: "You knew what you were doing. You're saying you're remorseful. Those actions don't show it."

{¶ 10} Thereafter, the trial court noted that appellant had two bond violations during the pendency of this matter, a failure to check-in on March 20, 2018, and a late check-in on May 15, 2018. The court also found that appellant had committed the offenses in this case as part of an organized criminal activity based upon the fact that the criminal activity took place over a two-month period, involved multiple victims, and was perpetrated by appellant and two co-defendants. Because of the bond violations and the organized criminal activity, the trial court found that it had the discretion to impose a prison term under R.C. 2929.13(B)(1)(b)(iii) and (ix).

{¶ 11} In applying the seriousness and recidivism factors under R.C. 2929.12, the trial court found three factors under R.C. 2929.12(B) applicable and demonstrative of the fact that appellant's conduct was more serious than conduct normally constituting the offense. First, the court stated that the injuries suffered by the victims were exacerbated because of the physical and mental condition of the victims as well as their ages. Second, the trial court found that the victims suffered serious physical, psychological, and economic harm as a result of appellant's conduct. Third, the court reiterated its determination that appellant committed the offense as a part of an organized criminal activity.

{¶ 12} Moving forward with its analysis of the seriousness and recidivism factors, the trial court found the factors under R.C. 2929.12(C), indicating that the offender's conduct is less serious than conduct normally constituting the offense, to be inapplicable in this case. The court then looked to appellant's prior criminal record and concluded that "some factors for recidivism" were applicable under R.C. 2929.12(D) and (E).

{¶ 13} As a result of its R.C. 2929.12 analysis, the trial court determined that a prison sentence was necessary to accomplish the principles and purposes of sentencing. Addressing appellant, the court stated:

> You agreed to the maximum sentence, 18 months on each count to run consecutive. And that's consecutive under 2929.14(C)(4), Necessary to protect the public from future crimes by you and punish you, not disproportionate to the seriousness of the count of the count (sic) of the danger you pose. And that, the harm caused by two or more multiple offenses committed was so great or unusual that no single prison term for any of those offense[s] adequately reflects the seriousness of [the] conduct. And also you have a history of criminal conduct. * * * The Court is going to go along with the 18 and 18 consecutive for 36 months.

{¶ 14} Thereafter, appellant's counsel reminded the court that the parties were recommending a *reserved* 36-month prison sentence, to be applicable only in the event of a community control violation. In response, the trial court revised appellant's prison sentence, ordering appellant to serve 17 months as to each offense, to be served

6.

consecutively for a total of 34 months.  In addition, the trial court ordered appellant to make restitution in the agreed amount of $61,660.  Appellant timely appealed.

## B.  Assignments of Error

{¶ 15} On appeal, appellant alleges six errors for our review:

1.  The trial court erred in not ordering community control pursuant to R.C. 2929.13(B).

2.  There is a denial of due process when the court considers [victims'] impact statements from acquitted charges, ignores the revised views of the victims and uses old [victims'] impact statements to form the court's opinion as to sentencing against recommendation of the state, the victims, adult probation and the police.

3.  The court erred in using its own factors of recidivism and ignoring the statutory factors.

4.  The court erred in sentencing defendant to incarceration when the sentence was not reasonably calculated to serve any of the purposes and factors of felony sentencing.

5.  The court erred in sentencing defendant to consecutive sentences when the sentence is disproportionate to the crime, there is no need to protect the public, and the harm caused was purely financial and the victims did not feel prison was necessary.

6. The court erred in having blanket pleading procedures which curtail a defendant's right to plead at any stage of the proceedings.

## II. Analysis

{¶ 16} In his assignments of error, appellant challenges the propriety of the sentence imposed by the trial court.

{¶ 17} The review of felony sentences is governed under R.C. 2953.08(G)(2). Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a sentence only if the record demonstrates, clearly and convincingly, either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant; or

(b) That the sentence is otherwise contrary to law.

"Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

8.

**{¶ 18}** In his first assignment of error, appellant argues that the trial court erred in failing to impose community control in lieu of a prison sanction. Specifically, appellant asserts that a community control sanction was required in this case under R.C. 2929.13(B), which provides, in relevant part:

(B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions that are available for persons sentenced by the court.

9.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.

(b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

* * *

(iii) The offender violated a term of the conditions of bond as set by the court.

* * *

(ix) The offender committed the offense for hire or as part of an organized criminal activity.

{¶ 19} According to appellant, he is entitled to the presumption of community control under R.C. 2929.13(B)(1)(a) because he has no felony criminal record, the most serious charge against him at the time of sentencing was a felony of the fourth degree, there is no indication in the record of a lack of community control availability, and he has not been previously convicted of or pleaded guilty to a misdemeanor of violence. The state does not challenge the applicability of the community control presumption under R.C. 2929.13(B)(1)(a). Rather, the state argues that the presumption does not apply here because the court determined under R.C. 2929.13(B)(1)(b) that appellant violated the

10.

conditions of his bond and committed the offenses for which he was sentenced as part of an organized criminal activity. While we agree with the state that the presumption of community control under R.C. 2929.13(B)(1)(a) does not apply here, we reach our conclusion for a different, and more fundamental, reason.

{¶ 20} In *State v. Bentley*, 11th Dist. Ashtabula No. 2017-A-0017, 2017-Ohio-8943, the Eleventh District examined the language of R.C. 2929.13(B)(1)(a) and determined that the community control presumption "only applies upon a court's sentencing an offender for a single fourth-or fifth-degree felony, not multiple ones." *Id.* at ¶ 19, citing *State v. Parrado*, 11th Dist. Trumbull No. 2015-T-0069, 2016-Ohio-1313, ¶ 23 and *State v. Jones*, 11th Dist. Ashtabula No. 2016-A-0017, 2017-Ohio-251, ¶ 55. Because the defendant in *Bentley* pleaded guilty to grand theft, a fourth-degree felony, on the same day as she pled guilty to breaking and entering, a fifth-degree felony, the court held that R.C. 2929.13(B)(1)(a) was inapplicable. *Id.* at ¶ 20; *see also Jones* at ¶ 57 (finding that the community control presumption under R.C. 2929.13(B)(1)(a) is inapplicable where the defendant pleaded guilty to two felonies of the fourth degree); *State v. Durant*, 2016-Ohio-8173, 76 N.E.3d 750, ¶ 9 (7th Dist.) (agreeing with the Eleventh District's conclusion that the community control presumption found in R.C. 2929.13 does not apply if the defendant pleaded guilty to or was convicted of multiple felonies of the fourth or fifth degree).

{¶ 21} Similarly, in *Parrado*, the Eleventh District found that R.C. 2929.13(B)(1)(a) was inapplicable where the defendant pleaded guilty to 12 nonviolent

11.

felonies of the fifth degree. *Parrado* at ¶ 23. In its analysis of the statute in that case, the court reasoned:

> If the legislature intended the presumption pertaining to community control to apply to situations in which an offender was convicted of or pleaded guilty to multiple felonies of the fourth or fifth degree, it could have pluralized these terms. It did not do so. As such, we construe the statute to envelop only those situations in which a qualifying offender has been convicted of or pleaded guilty to a singular, nonviolent felony of the fourth or fifth degree.

*Id.*

{¶ 22} Based on our review of the plain language of R.C. 2929.13(B)(1)(a), we agree with the Eleventh District that the community control presumption contained therein applies only where the defendant pleads guilty to a singular nonviolent felony of the fourth or fifth degree. Because appellant pleaded guilty to two felonies of the fourth degree in this case, he was not entitled to the presumption of community control. *See State v. Wallace*, 11th Dist. Ashtabula No. 2016-A-0008, 2016-Ohio-8515 (finding that defendant was not entitled to presumption of community control where he was convicted of three counts of theft from an elderly person, two of which were felonies of the fourth degree and one of which was a felony of the fifth degree).

{¶ 23} Even assuming, arguendo, that the presumption of community control applied in this case, the trial court was permitted to impose a prison sanction after it

found, under R.C. 2929.13(B)(1)(b)(iii) and (ix), that appellant had violated the terms of his bond and engaged in criminal conduct as part of an organized criminal activity.

{¶ 24} The term "organized criminal activity" is not defined in R.C. Chapter 2929, and therefore courts must decide whether an offense is part of an organized criminal activity on a case-by-case basis. *State v. Obregon*, 6th Dist. Sandusky No. S-99-042, 2000 Ohio App. LEXIS 3820, *9 (Aug. 25, 2000), citing *State v. Shryock*, 1st Dist. Hamilton No. C-961111, 1997 Ohio App. LEXIS 3494 (Aug. 1, 1997) (the offender was not part of an organized criminal activity when he merely acted as a "look-out" for his criminal colleague). In examining this term, courts have "generally considered the scope and length of the criminal activity, whether the offense was committed spontaneously/impulsively or with extensive planning, the number of people involved, and the nature of the charges * * *." *State v. Atchison*, 2d Dist. Clark No. 2017-CA-76, 2018-Ohio-2419, ¶ 24, citing *State v. Orms*, 10th Dist. Franklin No. 14-AP-750, 2015-Ohio-2870; *State v. Coran*, 2d Dist. Clark No. 2003-CA-80, 2004-Ohio-6874; *State v. Miller*, 4th Dist. Washington No. 07CA1, 2008-Ohio-1059; *State v. Radcliff*, 10th Dist. Franklin Nos. 97APA08-1054 and 97APA08-1056, 1998 Ohio App. LEXIS 1012 (Mar. 17, 1998).

{¶ 25} Here, the trial court's findings under R.C. 2929.13(B)(1)(b) are supported by the record. As to the court's bond violation finding under R.C. 2929.13(B)(1)(b)(iii), the record reveals that appellant violated the terms of bond by failing to report on March 20, 2018, and reporting late on May 15, 2018.

13.

{¶ 26} As to the court's finding that appellant engaged in organized criminal activity under R.C. 2929.13(B)(1)(b)(ix), the record demonstrates that appellant did not act alone in committing the theft offenses to which he pled guilty. Rather, appellant acted in concert with two co-defendants. Further, appellant's criminal activity was preplanned, not spontaneous or impulsive. Finally, appellant's illegal scheme affected multiple elderly victims who were scammed out of thousands of dollars over a two-month period. These facts support the trial court's determination that appellant engaged in organized criminal activity. *See State v. Goldsmith*, 6th Dist. Lucas No. L-16-1126, 2017-Ohio-484, ¶ 14 (upholding trial court's finding that the defendant was participating in organized criminal activity based upon his "coordinated calculated theft ring").

{¶ 27} In light of the foregoing, we find that the trial court did not violate R.C. 2929.13 in imposing a prison sanction in this case. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 28} In appellant's second assignment of error, he argues that the trial court erred in considering victim impact statements from victims of the theft offenses that were dismissed pursuant to the plea agreement he entered into with the state. Further, appellant asserts that the trial court erred in imposing a prison sanction contrary to the wishes expressed by the victims in the impact statements.

{¶ 29} Regarding the trial court's consideration of the victim impact statements that were prepared in this case, some of which pertained to victims from offenses that were dismissed prior to sentencing, Ohio law directs that a sentencing court "is not

14.

confined to [considering] the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.). Indeed, we have recognized that sentencing courts may consider a broad range of otherwise inadmissible evidence, including "charges that were reduced or dismissed under a plea agreement." *State v. Thompson*, 6th Dist. Sandusky No. S-11-052, 2013-Ohio-1594, ¶ 42, citing *State v. Degens*, 6th Dist. Lucas No. L-11-1112, 2012-Ohio-2421, ¶ 19; *State v. Robbins*, 6th Dist. Williams No. WM-10-018, 2011-Ohio-4141, ¶ 9; *State v. Banks*, 10th Dist. Franklin Nos. AP-1065, 10AP-1066, and 10AP-1067, 2011-Ohio-2749, ¶ 24; *State v. Johnson*, 7th Dist. Mahoning No. 10 MA 32, 2010-Ohio-6387, ¶ 26. Therefore, the trial court's consideration of facts pertaining to the dismissed charges was permissible.

{¶ 30} Nonetheless, appellant argues that case law supports his claim that the trial court's consideration of the victim impact statements in this case constitutes reversible error. Appellant cites one case, *State v. Patterson*, 110 Ohio App.3d 264, 673 N.E.2d 1001 (10th Dist.1996), to support his argument. However, *Patterson* is no longer good law in the Tenth District. *See State v. Daniel*, 10th Dist. Franklin Nos. 05AP-564 and 05AP-683, 2006-Ohio-4627, ¶ 40 (recognizing that *Patterson* was not consistent with precedent from the Supreme Court of Ohio and declining to follow its holding). Moreover, *Patterson* is distinguishable insofar as it involved a sentencing court's

15.

consideration of victim impact statements for *acquitted* charges, not charges that were dismissed via plea bargain.

{¶ 31} As to appellant's contention that the trial court erroneously failed to abide by the sentencing recommendations of the victims in this case, we note that although the trial court was required to consider the impact of appellant's crimes on the victims, the court was not required to consider or adopt the victims' sentencing recommendations. *State v. Carter*, 8th Dist. Cuyahoga Nos. 98579 and 98580, 2013-Ohio-375, ¶ 18 ("the governing statute does not make any provision for consideration of the victim's sentencing recommendation to the court"). Additionally, the trial court advised appellant that it was not bound by any sentencing recommendations prior to accepting appellant's plea. Appellant had the option to insist upon an agreed-upon sentence if that was his sole motivation for entering into his plea agreement with the state. In that case, the trial court would have been bound by the sentence because "once the trial court enters into the plea agreement by making a promise [to impose a specific sentence], it becomes a party to the agreement and is bound thereby." *State v. Vari*, 7th Dist. Mahoning No. 07-MA-142, 2010-Ohio-1300, ¶ 24.

{¶ 32} Because the plea agreement in this case included a *recommended* sentence, and not an *agreed-upon* sentence, the trial court was not bound by the terms of the agreement, and we therefore find no merit to appellant's argument.

{¶ 33} Accordingly, appellant's second assignment of error is not well-taken.

16.

{¶ 34} In his third and fourth assignments of error, appellant challenges the trial court's application of the seriousness and recidivism factors under R.C. 2929.12, and the principles and purposes of sentencing under R.C. 2929.11, respectively, to the facts of this case.

{¶ 35} A trial court that sentences a defendant for a felony offense, "shall be guided by the overriding purposes of felony sentencing: * * * to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). When considering the appropriate sentence, the trial court "shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id.* The sentence must be reasonably calculated to achieve those purposes "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

{¶ 36} To comply with the principles and purposes of sentencing set forth in R.C. 2929.11, the trial court must consider the seriousness and recidivism factors contained in R.C. 2929.12. To that end, we have previously explained,

> R.C. 2929.12 is a guidance statute. It sets forth the seriousness and recidivism criteria that a trial court "shall consider" in fashioning a felony

17.

sentence. Subsections (B) and (C) establish the factors indicating whether the offender's conduct is more serious or less serious than conduct normally constituting the offense. Subsections (D) and (E) contain the factors bearing on whether the offender is likely or not likely to commit future crimes. While the phrase "shall consider" is used throughout R.C. 2929.12, the sentencing court is not obligated to give a detailed explanation of how it algebraically applied each seriousness and recidivism factor to the offender. Indeed, no specific recitation is required. Merely stating that the court considered the statutory factors is enough.

*State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, 960 N.E.2d 1042, ¶ 11 (6th Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38 and *State v. Arnett*, 88 Ohio St.3d 208, 215, 724 N.E.2d 793 (2000).

{¶ 37} Here, appellant argues that the trial court erroneously applied R.C. 2929.12 by creating its own factors for recidivism and ignoring the statutory factors. Additionally, appellant urges that the sentence imposed by the trial court demeaned the victims by ignoring their sentencing recommendation of restitution and community control, and was not calculated to achieve the purposes of felony sentencing under R.C. 2929.11 because "financial sanctions would have been the minimum penalty to effectuate those purposes."

{¶ 38} At sentencing, the trial court clearly articulated that it was mindful of the principle and purposes of sentencing under R.C. 2929.11, and that it had considered the

18.

statutory factors in R.C. 2929.12. Based upon its consideration of the facts in this case, the court ultimately concluded that "some factors for recidivism" were applicable under R.C. 2929.12(D) and (E).

{¶ 39} In its brief to this court, the state notes that R.C. 2929.12 permits the trial court to consider its own factors for recidivism. Indeed, the statute directs courts to consider all of the statutory factors as well as "any other relevant factors" that would indicate that the offender is likely or not likely to commit future crimes. R.C. 2929.12(D) and (E). While it is not clear from the record that the trial court did, in fact, create its own recidivism factors as appellant suggests, doing so would not constitute reversible error in light of the plain language of R.C. 2929.12. Moreover, appellant's contention that the trial court ignored the statutory factors under R.C. 2929.12 is simply not supported by the record, which includes the trial court's detailed application of the relevant factors to the facts of this case.

{¶ 40} As noted above, the trial court's statement that it considered the sentencing statutes is sufficient to pass muster under Ohio law. *Brimacombe* at ¶ 11. Moreover, we find no merit to appellant's contention that the victims in this case were demeaned by the trial court's sentence. The trial court was not bound by the sentence recommended by the victims, and the imposition of a harsher sentence than the one recommended can hardly be described as demeaning. Accordingly, appellant's third and fourth assignments of error are not well-taken.

{¶ 41} In his fifth assignment of error, appellant argues that the trial court erred in imposing consecutive sentences under R.C. 2929.14(C)(4).

{¶ 42} Under R.C. 2929.14(C)(4), a trial court is required to make three findings before imposing consecutive sentences: (1) consecutive sentences are "necessary to protect the public from future crime or to punish the offender"; (2) imposition of consecutive sentences is not "disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one of the factors in R.C. 2929.14(C)(4)(a)-(c) applies. Relevant here, R.C. 2929.14(C)(4)(b) allows the trial court to impose consecutive sentences if "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct." Further, R.C. 2929.14(C)(4)(c) permits the imposition of consecutive sentences when "[t]he offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

{¶ 43} A sentencing court must make its findings under R.C. 2929.14(C)(4) at the sentencing hearing and incorporate them into the sentencing entry. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The trial court is not required to state the reasons behind its findings related to consecutive sentences, however. *Id.* Thus, the trial court's "mere regurgitation" of the statute is sufficient to support the

20.

imposition of consecutive sentences. *State v. Braswell*, 6th Dist. Lucas No. L-16-1197, 2018-Ohio-3208, ¶ 40, citing *State v. Ault*, 6th Dist. Ottawa No. OT-13-037, 2015-Ohio-556, ¶ 12.

{¶ 44} At the sentencing hearing, the trial court ordered appellant's sentences served consecutively, and then made the necessary findings to support the consecutive sentences under R.C. 2929.14(C)(4)(b) and (c). Specifically, the trial court found that consecutive sentences were

> [n]ecessary to protect the public from future crimes by you and punish you, not disproportionate to the seriousness of the count of the count (sic) of the danger you pose. * * * [T]he harm caused by two or more multiple offenses committed was so great or unusual that no single prison term for any of those offense[s] adequately reflects the seriousness of [the] conduct. And also you have a history of criminal conduct.

{¶ 45} In its sentencing entry, the trial court indicated that it "considered, weighed and made findings for sentencing of either a Concurrent and/or Consecutive sentence * * *." Further, the entry contains the trial court's finding that consecutive sentences "are applicable based on the factors in O.R.C. 2929.14(C)(4)(a)-(c) * * *."

{¶ 46} In his brief, appellant argues that the record does not support the trial court's findings. Appellant reasserts his prior argument challenging the trial court's finding that he carried out his offenses as part of an organized criminal activity. Having

21.

already rejected this argument based upon our review of the facts contained in the record, we find no merit to appellant's argument here.

{¶ 47} Additionally, appellant contends that the trial court, in imposing consecutive sentences, "overtly ignore[d]" the sentencing recommendations from the victims and other interested parties. We fail to see how the trial court's departure from the sentencing recommendations, which are not binding on the court, impacts our consecutive sentence analysis in this case.

{¶ 48} Finally, appellant argues that his clean criminal record does not support the trial court's finding under R.C. 2929.14(C)(4)(c). Notably, appellant's argument ignores his 2003 conviction for home improvement fraud, which is relevant in this case given its similarity to the present convictions, which involved further efforts to defraud elderly victims by promising to perform home improvement services. Further, "[o]nly one [of the R.C. 2929.14(C)(4)(a)-(c) factors] need to be supported by the record in order to affirm." *State v. Jones*, 8th Dist. Cuyahoga No. 104152, 2016-Ohio-8145, ¶ 8. Therefore, "the findings under R.C. 2929.14(C)(4)(b), alone, support imposition of consecutive sentences." *State v. Bray*, 2d Dist. Clark No. 2016-CA-22, 2017-Ohio-118, ¶ 31.

{¶ 49} In light of the foregoing, it is clear that the trial court made the requisite findings to support the imposition of consecutive sentences under R.C. 2929.14(C)(4). Accordingly, appellant's fifth assignment of error is not well-taken.

22.

{¶ 50} In his sixth and final assignment of error, appellant contends that the trial court abused its discretion by enforcing its blanket policy of accepting pleas "no later than 3:00 p.m. on the Friday that precedes the jury trial date."

{¶ 51} Relevant to appellant's argument, several Ohio courts have determined that a trial court abuses its discretion when it rejects a plea agreement by relying on a blanket policy rather than considering the facts and circumstances of the particular case. *State v. Switzer*, 8th Dist. Cuyahoga No. 93533, 2010-Ohio-2473, ¶ 15 (reversing trial court's refusal to accept a plea agreement based on its "unvaried policy of not accepting plea agreements on the day of trial"); *State v. Raymond*, 10th Dist. Franklin No. 05AP-1043, 2006-Ohio-3259, ¶ 15; *State v. Graves*, 10th Dist. Franklin No. 98AP-272, 1998 Ohio App. LEXIS 5608 (Nov. 19, 1998) (finding an abuse of discretion after trial court refused the defendant's plea based upon its blanket policy of not accepting no contest pleas); *State v. Hunt*, 4th Dist. Scioto No. 1536, 1985 Ohio App. LEXIS 8937 (Oct. 22, 1985) (finding abuse of discretion when the trial court refused to accept a plea agreement because it had a policy of rejecting agreements after jury cards were mailed to prospective jurors in a case).

{¶ 52} In this case, the trial court did not reject appellant's plea agreement. Moreover, appellant did not object to the trial court's plea policy. The failure to raise this issue waives all but plain error on appeal. Crim.R. 52(B). An alleged error does not constitute plain error unless it is obvious and, but for such error, the outcome of the

23.

proceeding clearly would have been different. *State v. Murphy*, 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001).

{¶ 53} At a pretrial held on January 22, 2018, an exchange between the state, defense counsel, and the trial court took place with respect to scheduling a trial date. Defense counsel informed the court that appellant was striving for a resolution of the case short of a trial, to which the court eventually responded:

Okay. Well, I'll get a report. As far as the jury trial goes, Court is going to find that, today that no plea was entered in this case today. This is January 22, 2018. The final plea date of February 12, 2018 at 11:00 a.m. shall remain. The jury trial date of February 27, 2018 at 10:00 shall remain. All parties shall be ready to proceed on those dates unless otherwise ordered by this Court pursuant to a judgment entry.

Should the Defendant choose to enter a plea in this case prior to the jury trial date, the defense attorney shall immediately notify this Court and present the Defendant before this Court for that plea. In such situations the plea must be entered no later than 3:00 p.m. on the Friday that precedes the jury trial date.

If it does, after 3:00, the Court calls in the jury, and therefore, wouldn't entertain anything but a plea to the indictment.

24.

{¶ 54} At a pretrial held on February 12, 2018, the trial court echoed its policy of accepting a plea only up to the Friday that precedes the jury trial date. The court went on to explain:

> Mr. Boswell, although this is your last hearing before we have the jury called and then try the case, the Court allows up until that Friday that precedes the trial date in order to enter a plea. So we won't set nothing. But if things are worked out, your counsel knows how to get ahold of the Court as well as the State does and then we can have – we won't set nothing, but you can be presented and take care of the plea. I'm not saying you have to plea. That's just to let you know how we handle this.

{¶ 55} Two days after the pretrial, appellant filed a motion to continue the trial date based, in part, on "active pre-trial negotiations towards a plea resolution." The court granted appellant's motion, and rescheduled the trial date for May 22, 2018, a Tuesday. Appellant entered his guilty plea on May 18, 2018, the Friday preceding the trial date.

{¶ 56} In his brief, appellant fails to identify what impact, if any, the trial court's plea policy had on this case. Rather, appellant simply states that the trial court abused its discretion by enforcing its plea policy. The transcript from the May 18, 2018 plea hearing reveals no indication that appellant wished to have more time for plea negotiations or was in any way rushed into entering his plea. Appellant did not seek more time to conduct plea negotiations following the three-month continuance granted by the court upon appellant's request.

25.

**{¶ 57}** Having failed to demonstrate that the trial court's plea policy affected the outcome of these proceedings, appellant has not established plain error. Accordingly, appellant's sixth assignment of error is not well-taken.

### III. Conclusion

**{¶ 58}** In light of the foregoing, the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Appellant's motion for bond pending appeal is denied as moot.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.